UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Anthony L. Mann, | ) | C/A No. 0 11-2232-RMG-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Lt. C Failey, Maj. Sheronda Sutton, Warden | ) | |
| Robert Stevenson, III; Ass Warden Larry Cartledge; | ) | **MEMORANDUM OF LAW** |
| Ass. Warden John Barkley; Inv David Hurt, | ) | **IN SUPPORT OF** |
| Valerie Whitaker, Classification Mngr Macon, | ) | **DEFENDANTS' MOTION FOR** |
| Donald Sampson, M.D.; Robyn Elergy; E. Keitt, | ) | **SUMMARY JUDGMENT** |
| James Harris, III; Capt Percy Jones, Capt. Wilson, | ) | |
| Lt Willie Simmons, Lt. T. Johnson; Sgt. Belue; | ) | |
| Sgt. Young, Sgt. Herman Wright; Sgt. Keith Moore; | ) | |
| Cpl. Otis Daniels, Cpl. Vincent Manley; Cpl. | ) | |
| Smalls, Cpl. Ray, Ofc Murray; Ofc. McNeal; | ) | |
| Ofc. Cox, Christian Manganelli, C. Cook, | ) | |
| | ) | |
| Defendants. | ) | |

## FACTS

The Plaintiff, Anthony Mann, #242498, ("Plaintiff) is currently being held at Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC") pursuant to orders of commitment from Charleston County.  The Plaintiff is currently serving a life sentence for two counts of murder, as well as convictions for burglary and armed robbery.  *See* Exhibit 1.

The Plaintiff reported to the SCDC in April 2002.  *See* Exhibit 1.  Since his arrival at the SCDC, the Plaintiff has been charged with more than 70 violations of SCDC policy, including a number of charges and convictions for escape and a number of charges and convictions for assaultive disciplinaries, including for possession of a weapon.  *See Id.*[1]

---

[1] Furthermore, it appears as though Plaintiff is either a current or former member of the Security Threat Group ("STG").  *See* Exhibit A.

In January 2010, the Plaintiff was transferred from McCormick Correctional Institution to Broad River Correctional Institution ("BRCI"). *See* Exhibit 1. Shortly before he was transferred to BRCI, Plaintiff attempted to escape after being transported to a hospital as a result of an alleged injury he sustained. *See* Exhibit 2. Within days of arriving at BRCI, Plaintiff was found to be in possession of a cell phone and a handmade handcuff key. *See* Exhibit 3. Because of his history, Plaintiff was placed on a 30-day rotation, meaning that every 30 days he was transferred to a different cell within the Saluda Unit, which is BRCI's special management unit. *See* Affidavit of Robert M. Stevenson, III. This was done to ensure that Plaintiff did not become too familiar with his cell or too close to other inmate's around him to attempt to escape or engage in other behaviors that threatened the security of the institution. *See Id.* Nevertheless, during his time at BRCI, Plaintiff was very disruptive and violent. In his Complaint and the attachments to his Complaint the Plaintiff acknowledges throwing feces and urine on a number of SCDC officers and assaulting another SCDC officer during a separate incident. Plaintiff was transferred to Perry Correctional Institution in March 2011. His records also reflect a number of times where Plaintiff was found to be in possession of weapons, escape tools, drugs, or other contraband. *See. e.g.,* Exhibits 4, 5, 6, 7, 8, and 9.

The allegations of the Plaintiff's Complaint all arise out of the Plaintiff's confinement within BRCI. The Plaintiff's Complaint was ostensibly filed pursuant to 42 U.S.C.A. §1983. The Complaint is 19-pages long (not including the extensive attachments), and contains a wide variety of allegations against twenty-nine (29) separate named Defendants, all of whom are or were at all times relevant to the Complaint employees of the SCDC. The Plaintiff has alleged numerous, unrelated, separate causes of action against the named Defendants, such as what appear to be claims of denial of access to the mail, retaliation, excessive use of force, denial of food, inadequate conditions of confinement, deliberate indifference to serious medical needs, civil conspiracy, and assault and battery. The Plaintiff has

claimed that the alleged actions, and inactions, of the named Defendants and other employees of the SCDC have violated his rights under the First, Eighth and Fourteenth Amendments of the United States Constitution.

By means of relief, in addition to monetary damages, the Plaintiff seeks an Order from the Court requiring the Defendants to return alleged legal material and mail the Plaintiff claims was confiscated from him. The Plaintiff also seeks an Order from the Court "terminating the employment of each defendant from SCDC without any benefits of any form of retirement from SCDC" and asks that criminal charges be brought "against each defendant having committed criminal actions against Plaintiff."

Defendants deny all of the Plaintiff's claims and move for summary judgment. This memorandum is submitted in support of Defendants' Motion for Summary Judgment.

## LEGAL ANALYSIS

### Summary Judgment Standard

Defendant's Motion for Summary Judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986), in which the United States Supreme Court held that:

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Furthermore, unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126 (4th Cir.1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 167 (4th Cir.1988). In

3

deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990); citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Pursuant to Fed.R.Civ.P, 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether a genuine issue has been raised, the party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Celotex Corp.* 477 U.S. at 324. Under this standard, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985)(emphasis added).

For the reasons discussed below, Defendants are entitled to summary judgment as a matter of law.

## **RESPONDEAT SUPERIOR**

As an initial matter, those individuals named as Defendants solely on the basis of the supervisory capacities of their positions within the SCDC at some time relevant to this action are entitled to summary judgment because the principle of *respondeat superior* does not apply to actions brought pursuant to 42 U.S.C. §1983 and any allegations which may be construed to allege that they failed to properly supervise SCDC employees, including any Co-Defendant, fails to state a claim.

These Defendants, including but not limited to Defendants Stevenson, Cartledge, Barkley, Macon, Wilson and Jones are included in this action solely because of the supervisory capacities of the positions they held within the SCDC during the relevant time period, such as Warden and Associate Wardens at BRCI, Classification Manager at BRCI, and Captains at BRCI, respectively.  Plaintiff fails to allege any facts or set forth any evidence showing how any of these Defendants were actually involved in any aspect of the events described in the Complaint or how any of them contributed to any alleged harm suffered by Plaintiff.

It is well settled that the doctrines of vicarious liability and *respondeat superior* do not apply in §1983 actions.  *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).  A defendant cannot be held liable for the acts of others without specific wrongdoing by that defendant.  *Monell v. Department of Social Services*, 436 U.S. 658 (694) (1978); *Stubbs v. Hunter*, 806 F.Supp. 81 (D.S.C. 1982).  While the above named Defendants could, in theory, be liable if the actions alleged to have occurred were the result of an official policy or custom of the institution, they may not be liable for the acts of the Department's employees absent such an official policy or custom which resulted in illegal action.  *See Shaw v. Stroud*, 13 F.3d 791 (4th Circ. 1994); and *Fisher v. Washington Metro Area Transit Authority*, 690 F.2d 1133 (4th Cir. 1982).  There is no evidence that any of the above named Defendants were aware of any of the acts or omissions alleged by Plaintiff, or that they either failed to take corrective action as a result of deliberate indifference to or tacit authorization of any such act or omission.  *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied, Reed v. Slakan*, 470 U.S. 1035 (1985).  Because the principle of *respondeat superior* does not apply in this case, the Plaintiff has failed to state a claim against those Defendants included in this action solely on the basis of the supervisory capacities of their positions within the SCDC at some time relevant to this action, and the action against them should therefore be dismissed.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act requires inmates to exhaust their administrative remedies prior to filing a §1983 action.  42 U.S.C. § 1997e(a).  The South Carolina Department of Corrections provides inmates with a procedure through which they may file grievances on issues related to conditions which directly affect an inmate. *See* SCDC Policy No. GA-01.12, "Inmate Grievance System."

The United States Supreme Court has clearly stated support for the proposition that exhaustion of administrative remedies by an inmate is a prerequisite to the filing of a lawsuit based upon claims arising out of incarceration.  42 U.S.C. §1997e(a) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*.  In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*.  Furthermore, the United States Supreme Court has made it clear that *proper* exhaustion is required, which means compliance with the agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81 (2006) (emphasis added).

Since his arrival at the SCDC, the Plaintiff filed over 170 grievances with the SCDC as of November 4, 2011. *See* Exhibit 10.  Between the time the Plaintiff arrived at BRCI and the time he was transferred to Perry Correctional Institution, the Plaintiff filed at least 73 grievances with the SCDC. *See Id*.  While a number of these grievances do concern claims that have been raised in the present lawsuit, the Plaintiff has not filed even Step 1 grievances with regard to many of the claims raised in the present action. *See* Exhibit 11. *In* fact, it appears as though the Plaintiff has technically exhausted his administrative remedies with regard to most, though not all, of his claims in the present case.      The

Plaintiff's grievances are filled with conclusory allegations of wrongdoing, often based purely on speculation or wholly unsupported by any evidence or fact.  Therefore, most, if not all, of Plaintiff's grievances were denied because they were found to be without merit.  The law is well established that the full exhaustion requirement is mandatory prior to even initiating a lawsuit under 42 U.S.C. § 1983. *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 677 (4th Cir. 2005).  In fact, the United States District Court for the District of South Carolina has held that a prisoner cannot and "does not comply with the mandatory exhaustion requirements by exhausting his remedies by exhausting his remedies during the course of litigation.  Exhaustion is a prerequisite to suit that must be completed prior to filing an action." *Peoples v. Burtt*, 2008 WL 2315865 (D.S.C 2008), citing *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 677 (4th Cir. 2005).

As set forth above, most of Plaintiff's claims have technically been exhausted.  Defendants will, to the best of their ability, address below which claims, if any, have not been addressed in grievances filed by the Plaintiff.  Where the Plaintiff has failed to exhaust his readily available administrative remedies with regard to a claim, his Complaint should be dismissed.

## FAILURE TO STATE A CLAIM

As an initial matter, the Plaintiff's Complaint contains mostly conclusory allegations of wrongdoing on the part of the Defendants.  In addition, the Plaintiff has named a number of individuals as Defendants without alleging any specific acts of wrongdoing on their part, which violated his rights under the Constitution or federal law.  To this extent, the Plaintiff has failed to state a cognizable claim under federal law.

## 42 U.S.C. 1983

Section 1983 states, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To succeed, a section 1983 plaintiff must show a violation of a right secured by federal law." *Skinner v. City of Miami*, 62 F.3d 344, 346 (11th Cir. 1995).   It is well established that a state actor's failure to observe a duty imposed by state law, standing alone, is not sufficient to establish a §1983 claim. *See Martínez v. Colón*, 54 F.3d 980, 989 (1st Cir. 1995). Although it is true that constitutional significance may attach to certain interests created by state law, not every transgression of state law does double duty as a constitutional violation. *Id.*   "[T]he Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations . . . ." *Id.*

## Eighth Amendment Claims

### 1.  Excessive Use of Force

The Eighth Amendment prohibits those who operate prisons from using "excessive physical force against inmates." *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). An inmate's Eighth Amendment claim involves a subjective component and an objective component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.* The Fourth Circuit Court of Appeals described how the Courts have "raised the bar" for plaintiffs alleging excessive use of force cases by stating:

> when an inmate claims…that prison officials used excessive force on him, he is forced to meet a higher standard to establish the subjective component.  Officials are entitled to use appropriate force to quell prison disturbances.  Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance' deliberate indifference is not a sufficiently rigorous standard…  Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force 'maliciously and sadistically for the very purpose of causing harm.'  *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996)(quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986).)

Factors for the Court to consider when deciding whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal quotation marks omitted). Thus, the issue for the Court to determine is not whether the use of force by an officer was absolutely necessary with the virtue of hindsight, but rather "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321.

The absence of significant injury alone is not alone dispositive of a claim of excessive force. Rather, the "core judicial inquiry," is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010) (citing

9

*Hudson v. McMillian,* 503 U.S. 1, 4, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). The extent of injury incurred is one factor that is suggestive of whether the force used was necessary in a particular situation. As the Court in *Wilkins* stated:

> The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S.Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

The evidence clearly reflects that

### a.    June 9, 2010 use of chemical munitions

The Plaintiff alleges that on June 9, 2010, Defendant Failey sprayed him with chemical munitions and then left him in the cell until a number of came to the unit to intervene. However, the records from this incident clearly reflect that another officer, who is not a named Defendant to this action, actually used chemical munitions on the Plaintiff on June 9, 2010. *See* Exhibit 12. According to the records, Plaintiff was seen by a mental health counselor after he threatened to kill himself because Defendant Failey took his legal work and gave it to contraband. *See* Exhibit 13. At that time, the Plaintiff was described by the mental health provider as "manipulative, demanding, and trying to control the situation" and later as "manipulative, conning, and crafty." *See Id.* The mental health provider further described Plaintiff as "argumentative, demanding that he got (sic) his legal work back, angry and did not believe that his actions caused for any type of consequences." *See Id.* The mental health provider recommended that the Plaintiff be placed in "strip cell… without any of his personal property, finger foods (no eating utensils), no mattress, SP blanket and 15 minute observation." *See Id.*

Shortly thereafter, Sgt. R. Williams gave Plaintiff several directives to back up to the service window of his cell so he could be restrained and removed from his cell. *See* Exhibit 12. The Plaintiff refused these directives, and a small amount of chemical munitions were used. *See Id*. After the use of the chemical munitions, the Plaintiff complied with the directives and was removed from his cell. *See Id.*. He was seen by medical, where no injury was noted, was allowed to decontaminate, then was placed in the crisis cell as directed by the mental health professional. *See Id.* and Exhibit 13.

Neither the incident reports nor the medical records reflect that any force was used by Defendant Failey, or any other Defendant for that matter, on June 9, 2010. Furthermore, the records clearly reflect that a reasonable amount of force was used in an attempt to get the inmate to comply with a reasonable directive. Finally, the medical records reflect that the Plaintiff was not injured at all as a result of the use of the chemical munitions. Therefore, it is clear that the Plaintiff has failed to set forth a claim against any Defendant relating to the June 9, 2010 use of force.

**b.    June 14, 2010 Incident**

The Plaintiff further alleges that on June 14, 2010, he was escorted from medical when he became light headed. He claims that he knelt down to keep from losing consciousness. The Plaintiff claims that Defendant Failey then grabbed him by the left arm and the back of the chain between his legs, which he claims "smashed his testicles and caused him extreme pain and agony." The Plaintiff alleges Defendant Failey dragged him back to medical, where he claims he "was checked and determined to be okay."

As an initial matter, the Plaintiff has not filed any grievance whatsoever concerning this alleged incident. Therefore, any claims made against these Defendants with regard to this incident are not properly before this Court since the Plaintiff failed to exhaust his administrative remedies with regard to these claims. Nevertheless, once again, the Plaintiff's records do not support the Plaintiff's claims. The

Plaintiff's medical records indicate that Plaintiff was seen by medical on June 14, 2010 at 5:30 p.m. *See* Exhibit 13. He was seen at medical again at 5:35 p.m. because he "collapsed on [the] floor on the way back to [his] room." *See* Id. Medical noted that he had "no apparent injury" and that, while Plaintiff claimed he felt weak, he "jumped up and cursed out" the Lieutenant then ambulated back to his room with a "steady gait." *See* Id. The records do not indicate that Plaintiff complained about Defendant Failey grabbing his arm or his restraints, or dragging him to medical. *See* Id. In fact, there is no evidence whatsoever that Defendant Failey even had any contact with Plaintiff during this alleged incident. Therefore, it is clear that the Plaintiff has failed to set forth a claim against any Defendant relating to the alleged June 14, 2010 incident.

**b.    July 28, 2010 Incident**

The Plaintiff alleges that on July 28, 2010, while he was being escorted back to his new cell, the officers escorting him to his cell went to remove the restraints on Plaintiff's legs when Defendant Failey snatched the restraints and "unnecessarily and improperly hooked the leg irons onto the nelly chains around Plaintiff's waist" which caused him pain. The Plaintiff claims he turned around and Defendant Failey was "smiling about it" and he "used his foot to shove her away from him." The Plaintiff claims he was them "thrown to the ground by the other officers" (who are not parties to this action) after he "layed within resisting him, or being harmed by them." Plaintiff claims that Defendant Failey then "began kicking and punching Plaintiff in the neck and facial area." Plaintiff claims that Defendant Failey continued striking and pinching Plaintiff while he was carried back to the holding cell and "layed into the puddle of urine he's deposited there earlier in the day."

The Plaintiff's story in his Complaint is wholly inconsistent with other stories he has told with regard to the July 28, 2010 incident, and is also inconsistent with the records relating to this incident. In a number of grievances and requests to staff, Plaintiff acknowledges kicking Defendant Failey and

nearly pushed her over a handrail. *See* Exhibit 14. The Plaintiff is now trying to downplay this, but shortly after the incident, the Plaintiff was bragging about kicking Defendant Failey[2]. *See* Exhibit 13, page 24. In fact, while Plaintiff spoke at great length to his mental health provider about his joy about kicking Defendant Failey, he did not mention once Defendant Failey kicking or hitting him at all. *See Id.* Furthermore, the records do not indicate that any excessive force was used on Plaintiff on July 28, 2010.

According to the records regarding this incident, while Plaintiff was being escorted to his cell, his leg chains were removed so he could walk down some stairs. *See* Exhibit 15. When the restraints were removed, Plaintiff kicked Defendant Failey. Plaintiff was then subdued and the restraints were placed back on Plaintiff, despite the fact that he was continuing assaultive and disruptive behavior. The records further reflect that the minimum amount of force was used to subdue Plaintiff.

The medical records also clearly do not support Plaintiff's claims. *See* Exhibit 13. The records reflect that Plaintiff was seen by medical immediately after the incident and absolutely no injuries were noted on Plaintiff. In fact, he did not complain about any injuries or pain whatsoever. *See Id.*

Ultimately, the records relating to the incident on July 28, 2010 reflect that Plaintiff assaulted Defendant Failey, and SCDC employee. Therefore, force was clearly necessary in that situation, especially given Plaintiff's assaultive history and his escape history. Furthermore, the records clearly reflect that any force used was reasonable and used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

### c.    August 23, 2010 Forced Cell Movement

The Plaintiff alleges that on August 23, 2010, chemical munitions were used on him on two occasions and he was left in his cell for over an hour with the chemical munitions in his cell. Plaintiff

---

[2] The Plaintiff's records are full of references regarding Plaintiff's clear animosity towards Defendant Failey. He once described dreaming of "slitting her throat, stabbing her boney little neck." *See* Exhibit 13, page 30. He also made threats to other officers that he was going to kill Defendant Failey. *See* Exhibit 9.

alleges that an extraction team then came to remove him from his cell. The Plaintiff concedes that he threw feces at the officers entering his cell, but claims he did not physically fight them. Plaintiff alleges that he was then thrown to the floor and placed in restraints without resistance and was then beaten unconscious and nearly choked. Plaintiff claims he was then carried down a hall while being thrown into door frames and walls. The Plaintiff them claims he was placed in the Restraint Chair for almost six hours.

Once again, the records and evidence simply do not support the Plaintiff's claims. According to the records, on or around August 23, 2010, the Plaintiff was removed from a disciplinary hearing after he was found to have a broken paperclip in his mouth. *See* Exhibit 6. After he was returned to his room, the Plaintiff was then given directives by a number of officers to allow himself to be restrained so he could be safely removed from his cell. *See* Exhibit 16. The Plaintiff refused all directives, and a small amount of chemical munitions were used on Plaintiff to try to get him to comply with the directives. *See Id.* When that did not work, an extraction team was assembled for a Forced Cell Movement. *See Id.* ad Exhibit 17. The Plaintiff barricaded himself in his room and covered his face with cloth. *See* attached Affidavits. The Plaintiff then climbed to the top bunk in his cell and began throwing bottles of feces at the officers on the extraction team. He then violently resisted the officers attempts to restrain him. *See* Exhibit 17 and attached Affidavits. Once the Plaintiff was finally restrained, he was walked from his cell, checked by medical, searched for contraband, then placed in the Restraint Chair to try to get him under control. *See* attached Affidavits. The medical records clearly reflect that the only injury to the Plaintiff was a one-inch cut on his head, which was treated. *See* Exhibit 13. Additionally, while Plaintiff has claimed a number of times that his mouth and teeth were injured as a result of this incident, the medical records reflect that the Plaintiff would not allow medical to examine his mouth. *See Id.*

Once again, force was clearly necessary with regard to the August 23, 2010 incident given the actions by Plaintiff in first refusing a number of directives, and then by throwing feces at the officers on the extraction team and violently resisting their attempts to safely retrieve him from his room. Once again, the records clearly reflect that any force used was reasonable and used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

> **d.** **Use of force on Inmate Terance Terrell Bryan**

The Plaintiff's Complaint contains allegations against Defendants Young and Johnson that they used excessive force on another Inmate at BRCI on December 30, 2010 into December 31, 2010. The Plaintiff does not allege that either Defendant ever used excessive force on him. The law is clear that the plaintiff only has standing to seek redress for his own injuries. The Plaintiff does not have standing to raise claims with respect to any harms or injuries allegedly sustained by others. *See Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 482, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Lake Carriers Ass'n v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, and that the merits of the case are irrelevant); and *Frank Krasner Enterprises, Ltd. v. Montgomery County, Maryland,* 401 F.3d 230, 234-236 & nn. 6-9 (4th Cir.2005) (collecting cases on standing). *Cf. Inmates v. Sheriff Owens,* 561 F.2d 560, 562-563 (4th Cir.1977) (one inmate does not have standing to sue on behalf of another inmate); *Hummer v. Dalton,* 657 F.2d 621, 625-626 (4th Cir.1981) (a prisoner cannot act as a "knight-errant" for others); and *Oxendine v. Williams,* 509 F.2d 1405, 1407 & n. * (4th Cir.1975) (a *pro se* prisoner cannot be an advocate for others in a class action). Therefore, Plaintiffs claims fail as a matter of law since the Plaintiff does not have standing to bring such claims.

Furthermore, the Plaintiff's records do not indicate that the Plaintiff was even affected by this use of force.

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments" on those convicted of a crime. *U.S. Const. amend. VIII*. However, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. *Id.* at 1380-1381. The Plaintiff has failed to establish that either Defendant Young or Johnson knew of and disregarded an excessive risk to the Plaintiff at any time. Furthermore, the Plaintiff has failed to produce any evidence of any physical or emotional injury resulting from his allegations, nor do his medical records provide any indication that the Plaintiff was at all affected by the use of mace during this alleged incident. *See* Exhibit 13. In fact, the Plaintiff was seen by medical the early morning of December 31, 2010 and did not mention this incident at all. *See Id.* Accordingly, any claim of cruel and unusual punishment arising out of this June 2009 incident should be dismissed. *See also, Bryan v. S. Carolina Dept. of Corr.*, 2007 WL 2710738 (D.S.C. Sept. 13, 2007); *Owens v. S. Carolina Dept. of Corr.*, 2007 WL 2736313 (D.S.C. Sept. 17, 2007), *Hammond v. S. Carolina Dept. of Corr.*, 2007 WL 2822394 (D.S.C. Sept. 25, 2007).

**e)      Use of the Restraint Chair**

Finally, the Plaintiff complains numerous times about the use of the Restraint Chair by the Defendants. An inmate in the Saluda Unit who is engaging in behavior that is dangerous to themselves, dangerous to the institution, unit or others, or otherwise destructive, disruptive or problematic to the safety and security of the institution is often placed in the Restraint Chair, which is a chair with ankle

and wrist restraints.  *See* Affidavit of Robert M. Stevenson, III.  The inmate is only placed in the Restraint Chair following approval by medical personnel and supervisory personnel.  *See Id.* Furthermore, an inmate is only placed in the Restraint Chair until they calm down and stop the behavior that caused them to be placed in the chair.  *See Id.*  The longest an inmate can be placed in the Restraint Chair at any one time is four hours, though they are not required to be placed in the Restraint Chair for that long.  *See Id.*  The Restraint Chair is not used as a means of punishment.  *See Id.*

The records reflect that the Plaintiff was only placed in the restraint chair when his behavior required it, either because he violently acted out (*See* Exhibits16, 17, and 18) or because he became destructive (*See* Exhibit 18).  Furthermore, there is no evidence, beyond Plaintiff's own conclusory allegations, that he was placed in there for longer than four hours at any one time.  Additionally, the Plaintiff's medical records do not indicate that Plaintiff was at any time injured in any way as a result of his placement within the Restraint Chair.  The use of the restraint chair was not unconstitutional in Plaintiff's case given the documented disruptive and belligerent behavior exhibited by the Plaintiff over an extended period of time.  *See. Blakeney v. Rusk County Sheriff,* 89 Fed. Appx. 897 (5th Cir.2004) [Where pretrial detainee was placed in restraint chair for twenty hours after he disobeyed orders and engaged in unruly, destructive practices, his due process rights were not violated since the purpose was not punishment] [bench trial]; *Green v. McCurry,* No. 02-4326, 2003 WL 21826549 *9 (N.D.Ill. Aug.5, 2003) [Evidence of inhumane treatment required]; . *Williams v. Burton,* 943 F.2d 1572 (11th Cir.1991) [Eighth Amendment not violated when inmate kept in four-point restraints for 28½ hours after inmate cursed, threatened to kill officers and spat on them, threw bodily fluids at them, creating a disturbance in the prison.]; *Green v. McCurry,* No. 02-4326, 2003 WL 21826549 (N .D.Ill. Aug. 5, 2003).

**2. Conditions of Confinement**

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

To state a claim that conditions of confinement violate in inmate's constitutional rights, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " *Strickler v. Waters,* 989 F.2d 1375, 1379 (4th Cir.1993) (quoting *Williams v. Griffin,* 952 F.2d 820, 824 (4th Cir.1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing**,** shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id.* at 847; see also *Parrish v. Cleveland,* 372 F.3d 294, 302 (4th Cir.2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *See Strickler,* 989 F.2d at 1380-81.  To survive summary judgment, the plaintiff must show more than *de minimis* pain or injury. *Id.*

a)    **Denial of food**

The Plaintiff's makes allegations in his Complaint that he was denied food on a number of occasions.  However, the Plaintiff only filed a grievance with regard to the alleged denial of food on November 27, 2010 by Defendant Smalls because he was wrongfully accused of withholding a tray.  *See* Exhibit 11.  Nevertheless, the records do not reflect that he was deprived of any meals, though they do reflect that he was seen with an extra tray.  Nevertheless, the Plaintiff cannot establish a claim for denial of food.

The Fourth Circuit Court of Appeals has long recognized the well-established principle that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.'"  *Shrader v. White,* 761 F.2d 975, 986 (4th Cir.1985).  However, it is well-settled that, while prisoners have a right to adequate food, *see Farmer v. Brennan,* 511 U.S. at 833, they do not have such a right to food that is tasty or even appetizing. *See Lunsford v. Bennett,* 17 F.3d 1574, 1578 (7th Cir.1994) (a complaint about "cold, poorly prepared beans" did not state an Eighth Amendment claim); *LeMaire v. Maass,* 12 F.3d 1444, 1456 (9th Cir.1993) (temporary Nutriloaf diet did not violate the Eighth Amendment); *see also Madyun v. Thompson,* 657 F.2d 868, 874-75 (7th Cir.1981) (allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); *Hoitt v. Vitek,* 497 F.2d 598, 601 (1st Cir.1974) (prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); *Prophete v. Gilless,* 869 F.Supp. 537 (W.D.Tenn.1994) (food which was cold by the time it was served did not constitute cruel and unusual punishment). Prisoners simply cannot expect the "amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see also Lunsford v. Bennett,* 17 F.3d 1574 (7th Cir.1994) (holding that

allegations of cold, poorly prepared beans were insufficient to state a constitutional claim). Furthermore, as set forth above, in order for an inmate to establish that the food he has been provided has violated his rights under the Eighth Amendment, the plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *See Strickler,* 989 F.2d at 1380-81.

The Plaintiff's allegations in the present case do not give rise to a claim under the Eighth Amendment. The Plaintiff has provided no evidence that he was denied any meals at BRCI. Nevertheless, there is no evidence that the Plaintiff sustained any "serious or significant physical or emotional injury resulting from" any denial of food. *See* Exhibit 13.

**b) "Strip cell" status and conditions of cell**

The Plaintiff also alleges that he was regularly placed on "strip cell" status and was placed in rooms that were covered in feces, were otherwise unsanitary, or were dangerous to his health. While Plaintiff did file a number of grievances with regard to his strip cell status, there do not appear to be any grievances regarding any unsanitary conditions of confinement. *See* Exhibit 11. Plaintiff did file requests to staff concerning the alleged unsanitary conditions of his cell, but it was pointed out to Plaintiff that he himself created those conditions. *See* Exhibit 19.

 Nevertheless, as set forth above, in order to set forth a conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Again, as set forth above, a prisoner cannot expect an institution to have the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see also Lunsford v. Bennett,* 17 F.3d 1574 (7th Cir.1994) (holding that allegations

of cold, poorly prepared beans were insufficient to state a constitutional claim); *Lasure v. Doby,* C/A No. 0:06-cv-1527, 2007 WL 1377694, (D.S.C. May 8, 2007) (unpublished) (noting that plaintiff was "being held in a[ ] jail facility, not a hotel").

In the present case, the Plaintiff has not alleged that he was deprived any necessities while at BRCI.  While the Plaintiff complains of very uncomfortable accommodations, those claims do not give rise to a constitutional claim, and were further brought on by the Plaintiff's own behavior.  *See* Exhibit 21.  *See Grissom v. Davis,* 55 Fed.Appx. 756, 757–758 (6th Cir.2003) (No violation where Plaintiff endured seven day mattress restriction but suffered no more than a de minimis physical injury); see also *Schroeder v. Kaplan,* No. 93–17123, 1995 WL 398878, * 2 (9th Cir. July 7, 1995) (No mattress for approximately one month held not to be unconstitutional).  Additionally, once again, there is no evidence that the Plaintiff has sustained any "serious or significant physical or emotional injury resulting from" any alleged conditions of Plaintiff's confinement.

### 3.  Medical Care or Treatment

The Plaintiff makes the conlusory allegation that he "was denied adequate medical care and the physician at BRCI was deliberately indifferent to his health care needs."  The Plaintiff claims that he "complained of, and continues to suffer, chronic head, neck, eye and back pains and has continuously sought treatment."  Plaintiff claims he was seen by Defendant Dr. Sampson, who he claims "refused to allow Plaintiff to address his complaints and needs" because he was on a limited schedule and did not have time.  Plaintiff further claims that Defendant Dr. Sampson told him that he would need to "pursue outside elective healthcare at his own expense" if he wanted medical treatment for his pain.

The following facts and legal arguments, supported by SCDC medical records and policies and other relevant documents establish that there is no basis for Plaintiff's allegations and that there has been no violation of Plaintiff's constitutional rights.  The Plaintiff's claim of improper medical care fails to

meet the standard for establishing cruel and unusual punishment. The record shows that Plaintiff has been given timely and professional care.

The Eighth Amendment protects inmates against cruel and unusual punishment during confinement. To establish that an inmate has been subjected to cruel and unusual punishment, there must be a showing "(1) that the deprivation of [a] basic human need was *objectively* 'sufficiently serious,' and (2) that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003), *citing Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal citations omitted).

For an inmate to establish a constitutional violation with regard to the provision of medical care or treatment, he must show that prison officials not only knew of an objectively serious condition, medical need, or risk of harm to the inmate, but also disregarded this condition or need. *Amos v. Maryland Department of Public Safety & Correctional Services*, 126 F.3d 589 (1997); *De'Lonta*, 330 F.3d at 634. Medical officials are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Rich v. Bruce*, 129 F.3d 336, 338 (1997) (holding that a prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

To establish a prima facie case under the Eighth Amendment, an inmate must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment." *Brice v. Virginia Beach Correctional Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906

F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Correctional Institution Inmates v. Lanzaro*, 834 F.2d. 326, 347 (3d Cir. 1987).

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D. Kan 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Furthermore, a mere disagreement between an inmate and physician concerning whether the inmate is receiving proper medical care fails to present a constitutional issue which the courts will entertain. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). The Fourth Circuit Court of Appeals has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness,... nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (internal citations omitted).

Plaintiff has not presented any evidence that, at any time relevant to this action, he suffered from any objectively serious medical condition or need, or that he faced a risk of serious harm to his health or well-being. The Plaintiff alleges that he "complained of, and continues to suffer, chronic head, neck, eye and back pains and has continuously sought treatment," but the Plaintiff has set forth no evidence that he has a "sufficiently serious" medical need that requires him to have any treatment beyond what he has received. Furthermore, the records clearly reflect that the Plaintiff has received continuous care and

treatment for any complaints he made while he was housed at BRCI. *See* Exhibit 13.

Ultimately, Plaintiff's SCDC medical records nowhere indicate that he was experiencing any immediately life-threatening or other serious ailment, injury or illness at any relevant time. *See* Exhibit 13. Even assuming, *arguendo*, that Plaintiff did at some relevant time suffer from a serious medical condition or need, which Defendants deny, Defendants' actions with respect to Plaintiff's medical care were neither objectively nor subjectively blameworthy. At most, Plaintiff had a disagreement with medical staff as to the proper treatment of the condition(s) alleged in the Complaint. There is no evidence that Defendants disregarded any serious medical condition or need of Plaintiff, or that Defendants failed to timely and appropriately observe, assess or treat Plaintiff's complaints. *See*

Plaintiff's medical records indicate that he was seen on numerous occasions by medical staff of the facilities and institutions in which he was housed. *See* Exhibit 12. These records also indicate that Plaintiff's medical complaints were documented and addressed in a sound manner. *See Id.* Specifically, with regard to the conditions described in Plaintiff's Complaint, these records indicate that these conditions was followed and addressed with Plaintiff. Even if the Plaintiff could present evidence in support of a claim for malpractice, a matter not properly before the Court here, an allegation of deliberate indifference would not automatically translate into a constitutional violation. Negligence or malpractice in medical services does not create a constitutional cause of action. *Wright*, 766 F.2d at 849. Moreover, medical malpractice would not become a constitutional issue merely because the plaintiff is a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Documents presented by Defendants establish that no improper medical care has occurred. While Plaintiff may disagree that his medical diagnosis and treatment were adequate, this disagreement does not rise to the level of a constitutional question or violation.

**4.  Denial of medical care by non-medical Defendants**

To the extent the Plaintiff is alleging that he was not provided with proper medical care by any non-medical Defendants, the Plaintiff has failed to establish such a claim against any of these Defendants.  In *Miltier v. Beorn*, 896 F.2d 848 (1990), the Fourth Circuit Court of Appeals ultimately held that in order to establish liability under §1983 against a non-medical prison official in a case concerning the denial of medical treatment, an inmate must show that the official (1) was actually personally involved with the denial of the medical treatment, (2) deliberately interfered with a prison physician's care of the inmate, or (3) implicitly authorized or was indifferent to the constitutional violations of the prison doctor.  *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990); *see also Shelton v. Angelone*, 148 F.Supp.2d 670 (W.D.Va. 2001) and *Wall v. Major*, No. 07-1095, slip op (D.S.C. Oct. 22, 2007).

Furthermore, to state any claim of inadequate medical treatment under 42 U.S.C §1983, any claim of inadequate medical treatment against the Defendant must rise to the level of deliberate indifference.  Therefore, for an inmate to establish a constitutional violation with regard to the provision of medical care or treatment, he must show that prison officials not only knew of an objectively serious condition, medical need, or risk of harm to the inmate, but also disregarded this condition or need.  *Amos v. Maryland Department of Public Safety & Correctional Services*, 126 F.3d 589 (1997); *De'Lonta*, 330 F.3d at 634.  The Plaintiff makes no allegations that the Defendant knew of an objectively serious medical condition or need of the Plaintiff or that she disregarded this condition or need.  Therefore, the Plaintiff has failed to establish any liability on the part of any of the Defendant with regard to his access to medical treatment.

## ACCESS TO COURTS

The basis for Plaintiff's Complaint is his claim that he was denied access to the courts in violation of his constitutional rights because his legal materials were confiscated by Defendant Failey on or around June 9, 2010. However, because Plaintiff cannot show any relevant actual injury, his claims must fail.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In *Bounds,* the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. To state a cognizable claim for denial of meaningful access to the courts a prisoner must allege a **specific actual injury** resulting from the alleged denial. *Lewis v. Casey,* 518 U.S. 343, 351-52, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Cochran v. Morris,* 73 F.3d 1310 (4th Cir.1996). "Insofar as the right vindicated by *Bounds* is concerned, 'meaningful access to the courts is the touchstone,'…, and the inmate therefore must go one step further and demonstrate that" his efforts to pursue a legal claims was somehow thwarted by the alleged denial of access to the courts. *Lewis,* 518 U.S. at 351. The Court further explained that

> the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the *Bounds* line involved attempts by inmates to pursue     direct appeals from the convictions for which they were incarcerated, or habeas petitions.           In *Wolf v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), we extended     this universe of relevant claims only slightly, to "civil rights actions"-*i.e.,* actions under     42 U.S.C. § 1983 to vindicate "basic constitutional rights."

Lewis, 518 U.S. at 354 (internal citations omitted); see also Christopher v. Harbury, 536 U.S. 403, 414-15, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (stating that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong").

In the present case, the Plaintiff cannot establish any injury as a result of his alleged denial of access to the courts.  As an initial matter, Plaintiff's materials were confiscated because Plaintiff violated SCDC policy by sending these materials out to be copied under another inmate's name.  *See* Exhibits 11 and 13.  Therefore, they became contraband under SCDC policy.  *See* Exhibit 20. Furthermore, in this case, the Plaintiff's Complaint fails to allege any specific facts indicating that he has been denied access to the courts or that he has been adversely affected in pursuing any legal claims due to the alleged denial of legal materials.  Furthermore, the record in this case clearly demonstrates that Plaintiff has the ability to draft, serve and file a variety of legal documents.  Because he cannot show any relevant actual injury arising out of an alleged denial of access to the courts, his claims against Defendants fail.

## FOURTEENTH AMENDMENT CLAIMS

The Plaintiff's primary claim appears to be that Defendants violated his rights to due process. The Fourteenth Amendment prohibits deprivation by a State of any person's right to life, liberty or property without due process of law.  Plaintiff appears to allege that he had a Fourteenth Amendment liberty or property interest in being present in the hearings concerning his "strip cell" status and in the hearings concerning his request for protective custody, and that the acts and omissions of Defendants deprived him of such interest.  For the following reasons, Plaintiff's Fourteenth Amendment claims as expressed above must fail.

In order to establish a claim for violation of due process rights under the Fourteenth Amendment, a plaintiff must show that (1) a constitutionally protected liberty or property interest is in issue, and (2) the state utilized constitutionally deficient procedures in its deprivation of that interest. *Board of Regents v. Roth*, 408 U.S. 564 (1972).  Thus, Plaintiff must establish that he had a protected property or liberty interest in being present in the hearings concerning his "strip cell" status and in the hearings concerning

his request for protective custody in order to state a cognizable claim that his inability to attend these hearings violated his due process rights. However, the Due Process Clause alone does not create a liberty or property interest in prison employment. Rather, a plaintiff must show either (1) that he has a "legitimate claim of entitlement" to be present at these hearings; *Roth*, 408 U.S. at 577, or (2) that failing to have such employment constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995).

The Plaintiff has pointed to no law or provision allowing him such a liberty or property interest. Furthermore, prisoners do not have a constitutionally recognized liberty interest in a prison placement or particular security classification. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Additionally, the records reflect that the Plaintiff was placed in protective custody pending an investigation into his claims against Defendant Failey, but that he was kept out of the hearings because he posed a safety concern. Given Plaintiff's history, that was certainly not unreasonable. *See* Exhibit 22. Furthermore, with regard to the hearings concerning Plaintiff's "strip cell" status, Plaintiff has pointed to no policy or law that requires his attendance at any such hearings.

As set forth above, Plaintiff has no protected liberty or property interest in in being present in the hearings concerning his "strip cell" status and in the hearings concerning his request for protective custody. Therefore, as a matter of law, state a cognizable claim for violation of his due process rights based upon his inability to obtain paying employment.

## GRIEVANCE CLAIMS

To the extent the Plaintiff is claiming that he was denied access to the prison's grievance system or that his grievances were mishandled, such claim is without merit. That is because "there is no constitutional right to participate in grievance proceedings." *Adams v. Rice,* 40 F.3d 72 (4th Cir. 1994). Nevertheless, it is clear that the Plaintiff was given the opportunity file numerous grievances, and that

his grievances were considered by the appropriate SCDC officials and denied.  The Plaintiff had the opportunity to further appeal these decisions.  Therefore, the Plaintiff was clearly given ample opportunity to grieve any of his complaints with regard to his confinement at BRCI.

## FIRST AMENDMENT CLAIMS

### 1)  Mail Claims

Plaintiff claims that, while he was housed at BRCI, his mail was regularly withheld and reviewed outside of his presence, in violated his constitutional rights. However, Defendants may read his incoming mail pursuant to SCDC policy.  *See* Affidavits of Eugene Keitt and David Hurt.  Regulations affecting sending of mail to prisoners are centrally concerned with maintenance of prison order and security and are, therefore, measured under the reasonableness test of *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Thornburgh v. Abbott*, 490 U.S. 401, 404, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Such regulations are valid if reasonably related to legitimate penological interests, giving prison officials considerable deference in regulating delicate balance between prison order and demands of "outsiders" who seek to enter prison environment, Id. at 404-07.

Furthermore, while the Plaintiff claims his mail was withheld from him, he offers no proof to support this claim.  Furthermore, as set forth in the Affidavits of Defendant Keitt and David Hurt, Plaintiff's mail was reviewed pursuant to SCDC policy, but was not withheld from him.  Plaintiff further fails to show, however, that his constitutional rights were violated because he has not shown that he suffered any injury. In order to make out a prima facie case of denial within any alleged legal mail or any mail, an inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir.1996). This, Plaintiff has not made a case that any Constitutional right of his was violated in any way.

## CONSPIRACY

Plaintiff claims that a number of Defendants conspired to destroy the video from the Forced Cell Movement on or around August 23, 2010.  In order to establish a civil conspiracy claim under 42 U.S.C. §1983, the Plaintiff must present evidence that the Defendant conspirators "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right."  *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Plaintiff has "a weighty burden to establish a civil rights conspiracy."  *Id.*  While Plaintiff does not need to provide "direct evidence of a meeting of the minds, [Plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective.  *Id.*  Therefore, "to survive a properly supported summary judgment motion, [Plaintiff's] evidence must, at least, reasonably lead to the inference that [Defendant and her alleged co-conspirator(s)] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."  *Id.*

The Plaintiff has failed to establish that any Defendants were engaged in any civil conspiracy to deprive him of any constitutional right.  The Plaintiff has not identified any evidence that the Defendants involved in the alleged conspiracy "acted jointly in concert and that some overt act was done in furtherance of the conspiracy."  The Plaintiff further does not allege any deprivation of a constitutional right by Defendants by the alleged destruction of this vidoe.  Plaintiff's conclusory statements that Defendants conspired without more, do not establish a conspiracy claim against the Defendant.

Furthermore, to the extent the Plaintiff is alleging that the alleged conspiracy fell under 42 U.S.C. §1985, he must establish: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a

consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995). Once again, the Plaintiff's unsupported, conclusory assertion that the Defendant conspired with SCDC employees cannot establish a claim of conspiracy sufficient to defeat a motion for summary judgment.

Nevertheless, it is clear that the video in question was not destroyed; rather, it cannot be retrieved from the disc, apparently because of a mechanical malfunction. *See* Affidavit of David Hurt. The Plaintiff has been told this a number of times (*See* Exhibit 11), but continues to raise this claim to try to cast doubts on Defendants' actions during the Forced Cell Movement on or around August 23, 2010.

## **RETALIATION**

Plaintiff alleges, without supporting evidence, that the actions of Defendants' as alleged in the Complaint were because Plaintiff filed complaints and wrote letters to upper level officials following the death of another inmate to "expose the wilfull (sic) neglect of officers he claims were involved in the inmate's death. As an initial matter, the Plaintiff has failed to establish that he sent any such complaints or letters. The Plaintiff has attached a copy of one grievance he apparently filed regarding the death of this inmate, which was returned unprocessed because Plaintiff was uninvolved in the incident underlying the grievance. Plaintiff has also set forth no evidence that any Defendant was even aware that the Plaintiff filed any such alleged complaints or letters. Nevertheless, the Plaintiff's allegations have no basis in fact or in law, and therefore must fail.

"A plaintiff alleging that government officials retaliated against [him] in violation of [his] constitutional rights must demonstrate, *inter alia,* that [he] suffered some adversity in response to [his] exercise of protected rights." *Am. Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993). To the extent the Plaintiff is alleging a retaliation action asserting First Amendment violations, he must show that the Defendants' conduct alleged in the Complaint

negatively affected his constitutional rights. *Id.* at 785. It is not enough that the complained of conduct merely inconvenienced the Plaintiff. *Id.* at 786 n. 6. Furthermore, the Plaintiff must allege specific facts to support a claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. *Adams v. Rice*, 40 F.3d 72 (4th Cir.1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995).

In this case, Plaintiff merely alleges that Defendants retaliated against him; he offers no evidence to substantiate his claims. Defendants have submitted affidavits and supporting documentation to evidence their appropriate actions toward Plaintiff. (*See* Affidavits of Defendants and all attachments). Furthermore, the Plaintiff cannot show that he suffered any adversity in response to his exercise of protected rights, nor can he show that the conduct of the Defendants negatively affected his constitutional rights. The Plaintiff does not have a "protected right" to file complaints or grievances against the officers at the SCDC. Furthermore, the Plaintiff has failed to establish how any actions of the Defendants in any way affected any of his constitutional rights. Accordingly, Plaintiff's retaliation claim must be dismissed.

## ELEVENTH AMENDMENT IMMUNITY

In dealing with §1983 litigation, the U.S. Supreme Court has distinguished between actions brought against state employees acting in their official capacities from those brought against state employees acting in their individual capacities. Whether an employee is sued in his individual or official capacity does not relate to the capacity they were acting in at the time of the alleged violation, but rather how the defendant is sued, and the proof necessary to impose liability. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the Court determined that state employees acting in their official capacity are not "persons" subject to liability under §1983 but rather are considered "arms of the state" and as such are entitled to immunity unless the State has

waived its immunity in this area or Congress has exercised its power under the Fourteenth Amendment to override immunity.  This interpretation by the Court means that a Plaintiff can bring suit only against state employees in their individual capacities.

In the present case, Plaintiff does not alleges whether the Defendants are each being sued individually or in their official capacity.  However, the evidence clearly shows that Defendants were at all times acting within the scope of their employment and at all times complied with agency policies and procedures when dealing with Plaintiff.  As a result, Defendants should be considered "arms of the state" of South Carolina and should therefore be granted immunity under the Eleventh Amendment.  In such a case, the Eleventh Amendment would prohibit the award of monetary damages for any alleged violations and the action against these Defendants should be dismissed.  *Will, supra*.

## QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials who are carrying out discretionary functions from personal monetary liability in cases where their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  In *Cleavinger v. Saxner*, 474 U.S. 193 (1985), the United States Supreme Court upheld the extension of qualified immunity to prison officials.  In discussing the issue of qualified immunity, the Court of Appeals for the Fourth Circuit stated that:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does *not* violate clearly established statutory or constitutional rights of which a reasonable person would have known."  "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."  Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent."  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), *cert. denied*, 118 S.Ct. 89 (1995).

In addressing the defense of qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Lane*, 526 U.S. 286, 290 (1999). If the court initially determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). Clearly, Plaintiff has failed to demonstrate that any actions of Defendants violated any of his constitutional rights. Even if a constitutional right of Plaintiff is found to have been violated, there is no evidence that such a right was clearly established at the time of the alleged violation, or that a reasonable person in Defendants' positions would have known that what they was doing violated that right. *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). Defendants in this case was at all relevant times performing discretionary functions in the context of performing official duties and functions. At no time did either Defendant knowingly violate any of Plaintiff's statutory or constitutional rights, and they are therefore entitled to qualified immunity.

### PLAINTIFF HAS NOT SHOWN EVIDENCE OF PHYSICAL INJURY

42 U.S.C. §1997e(e) states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered in custody without a prior showing of physical injury." To the extent that Plaintiff alleges he has suffered emotional injuries and damages as a result of any Defendant's alleged acts and omissions, such claims should be dismissed. Plaintiff has presented no evidence of any physical injury as a result of any alleged actions by any

named Defendants.  Because Plaintiff has failed to show any evidence of a physical injury, any claims for mental or emotional injuries must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants are entitled to summary judgment as a matter of law and Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,

s/ Erin M. Farrell_____
Daniel R. Settana, Jr., FED ID #06065
Erin M. Farrell, FED ID #10123
McKay, Cauthen, Settana & Stubley, P.A.
1303 Blanding Street
P. O. Drawer 7217
Columbia, SC   29202
(803) 256-4645
Attorneys for Defendants

Columbia, South Carolina
July 30, 2012