IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Anthony L. Mann,                               )         C/A No.  0:11-2232-RMG-PJG
                                               )
                        Plaintiff,             )
                                               )
v.                                             )
                                               )
Lt. C. Failey; Maj. Sheronda Sutton; Warden    )         **REPORT AND RECOMMENDATION**
Robert Stevenson, III; Ass. Warden Larry       )
Cartledge; Ass. Warden John Barkley; Inv.      )
David Hurt; Valerie Whitaker; Classification   )
Mngr Macon; Donald Sampson, *MD*; Robyn        )
Elerby; E. Keitt; James Harris, III; Capt. Percy )
Jones; Capt. Wilson; Lt. Willie Simmons; Lt.   )
T. Johnson; Sgt. Belue; Sgt. Young; Sgt.       )
Herman Wright; Sgt. Keith Moore; Cpl. Otis     )
Daniels; Cpl. Vincent Manley; Cpl. Smalls;     )
Cpl. Ray; Ofc. McNeal; Ofc. Cox; Christian     )
Manganelli; and C. Cook,                       )
                                               )
                        Defendants.            )
_____        )

        The plaintiff, Anthony L. Mann ("Mann"), a self-represented state prisoner, filed this action

against employees of the South Carolina Department of Corrections ("SCDC") pursuant to 42 U.S.C.

§ 1983.[1]  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule

73.02(B)(2) DSC on the defendants' motion for summary judgment.  (ECF No. 113; see also

Additional Attachments, ECF Nos. 114, 115, 116, 117, & 118; Supplement, ECF No. 124, 125, &

126.)  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Mann was advised of the

summary judgment and dismissal procedures and the possible consequences if he failed to respond

---

        [1] Defendant Murray was dismissed from this action pursuant to the Order of the Honorable
Richard M. Gergel, United States District Judge, issued June 25, 2012.



adequately to the defendants' motion. (ECF No. 119.) Mann filed a response in opposition[2] (ECF No. 171), and the defendants replied (ECF No. 176). Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted in part and denied in part.

## BACKGROUND

Mann's Complaint raises claims regarding multiple incidents that occurred between March 2010 and January 2011 while he was housed at the Broad River Correctional Institution ("BRCI"). Upon his arrival at BRCI in January 2010, Mann's record with the South Carolina Department of Corrections ("SCDC") reflected that he had had multiple criminal and disciplinary charges and convictions, including attempted escape and assault, and was accordingly viewed as threat to the security of BRCI. (Stevenson Aff. ¶ 5, ECF No. 113-2 at 2; Record Summary, ECF No. 113-9 at 2-5.) Mann was therefore housed in BRCI's special management unit (SMU) and was transferred to a different cell within the unit every thirty days to ensure that Mann did not become too familiar with his surroundings such that he would attempt to escape or threaten the security of BRCI. (Stevenson Aff. ¶ 6, ECF No. 113-2 at 2.)

Many of Mann's claims involve Mann's apparently antagonistic relationship with Defendant Failey, and arose shortly after his transfer to BRCI when Mann alleges that, in retaliation for filing

---

[2] To the extent that Mann raises additional claims in his filings or response to the defendants' motion, Mann has not filed a proper motion to amend his Complaint to include any additional claims. Accordingly, such claims are not properly before the court. See, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").



complaints, he was denied legal supplies and access to his legal work, his personal and legal mail was withheld, and he was denied food.

Mann alleges that on June 9, 2010, Defendant Failey confiscated some of Mann's legal documents and threatened to destroy them. When Mann protested, Failey allegedly sprayed him three times in five minutes with chemical munitions. He alleges that he was then placed in a "strip-cell" and was not allowed to shower for five days following this incident.

Mann went on a hunger strike following the June 9, 2010 incident. On June 14, 2010, on the way back to his cell following a visit to "medical" to check his vital signs, Mann alleges that he became lightheaded. Officer Beckett called to Defendant Failey to assist him in taking Mann back to medical. Mann then alleges that, while he was in full body restraints, Failey grabbed him by the arm and the chain between his legs and dragged him back to medical, causing Mann great pain.

Following this incident, Mann complains that, per order of Failey, he was refused meals and that Defendant Moore turned off the water supply to his cell. Mann alleges that on July 28, 2010, Failey, after receiving a call from Mann's attorney the previous day, put Mann in a holding cell for seven and a half hours while he was in full restraints and did not allow him to use the restroom, causing Mann to wet himself. During his transport back to his unit, Mann admittedly "used [his] foot to shove [Failey] away from him," causing the other four officers escorting him to throw him to the ground and restrain him. Mann claims that while he was restrained, Failey began kicking and punching Mann in the head, neck, and face.

Mann was again placed in a "strip-cell," which he alleges was covered with fecal matter, where he remained for the next seventeen days with no running water, no mattress or blanket, no hygiene supplies (including toilet paper), and no opportunity to shower. Mann also complains that



his personal and legal mail was withheld. Mann admits during this time, on August 5, 2010, he "popped the fire sprinkler head in [his cell] . . . in order to gain the attention of the BRCI Administration." Mann was then removed from his cell and placed in a restraint chair where he alleges he remained for over four hours.

On August 23, 2010, following a disciplinary hearing, Defendant Cox informed Mann that Defendant Sutton had ordered that Mann be put in the metal detection chair and then into a "strip-cell." Mann, who had been returned to his cell, refused to be placed in a strip-cell. He alleges that Defendants Simmons and Wright sprayed chemical munitions into his cell, left for an hour, then returned and sprayed two more "prolonged bursts" into his cell. An extraction team then arrived consisting of Defendants Moore, Manley, Cook, McNeal, and Manganelli. Defendants Simmons, Cox, Wright, Daniels, and Wilson were also present, and Defendant Ray was videotaping the event. Mann concedes that when the extraction team entered his cell, he threw fecal matter at them. He alleges that he was thrown to the floor and placed in restraints without resisting the officers, and that the officers then began beating him until he became unconscious. Mann further alleges that Defendant Manganilli repeatedly slammed Mann's face into the concrete floor, breaking Mann's front tooth, and then rubbed fecal matter in Mann's face and mouth. He also alleges that one of the officers wrapped a bed sheet around Mann's neck, repeatedly choking him. Mann was then placed in the restraint chair, where he alleges he remained for almost six hours. After being removed from the chair, Mann was placed in a "strip-cell," where he alleges he was denied a security blanket for 31 days, socks for 77 days, and a mattress and bed sheets for 136 days. Additionally, Mann alleges that on September 3, 2010, Defendant Wright informed Mann that the video of the August 23, 2010 incident would be destroyed.



Mann alleges that on November 27, 2010, Defendant Smalls denied him his morning meal.

On December 20, 2010, the inmate in the cell next to Mann's was sprayed with chemical munitions. Mann alleges that some of the chemical munitions also contaminated his cell, causing him pain and suffering.

Mann requested to be placed in protective custody from Defendant Failey. He alleges his due process rights were violated because he was not allowed to attend the hearings regarding this request. He complains his due process rights were also violated by the "strip-out/confiscation board" that determined what property items Mann was allowed during his time in the "strip-cell."

Finally, Mann alleges that he was denied adequate medical care for the above-described incidents and that the grievance coordinator at BRCI failed to investigate his claims. (See generally Compl., ECF No. 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).



In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Moreover, this court recognizes that while the determinations of credibility and the weighing of evidence are matters for the jury and not the court, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.**    **Defendants' Motion for Summary Judgment**

    **1.**    **Exhaustion of Administrative Remedies**

The defendants note that, during the time period that Mann was housed at BRCI, Mann filed at least seventy-three grievances. (ECF No. 121.) The defendants concede that Mann has technically exhausted his administrative remedies with regard to most, though not all, of his claims. They argue, however, that where Mann has failed to exhaust his administrative remedies, his claims should be dismissed.

In response to the defendants' motion, Mann alleges that, in addition to the grievances referenced by the defendants, he has filed multiple grievances that were never processed, specifically referencing and attaching a Step 1 grievance regarding events that occurred on June 14, 2010. (Mann Aff., ECF No. 171-14 at 2-4.) "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008); see also Stenhouse v. Hughes, C/A No. 8:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. 2006) ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies."). Accordingly, the defendants have not shown that they are entitled to summary judgment on this basis.

To the extent that Mann alleges that the his due process rights have been violated by the defendants either because his grievances were not processed or because of the way in which his grievances were processed, such a claim fails. Prison inmates have no federal constitutional right to have any inmate grievance system in operation at the place where they are incarcerated. See, e.g., Adams v. Rice, 40 F.3d 72 (4th Cir. 1994) (holding that inmates have no constitutional right to a



grievance procedure); <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988); <u>Brown v. Dodson</u>, 863 F. Supp. 284, 285 (W.D. Va. 1994). Furthermore, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees. <u>See</u> <u>Mann</u>, 855 F.2d at 640. As a result, even if corrections officials fail to apply properly an inmate grievance procedure, as Mann appears to allege, such failure is not actionable under § 1983. <u>Ashann-Ra v. Commonwealth of Virginia</u>, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000).

### 2.    Official Capacity Claims

To the extent that Mann is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70 (1989); <u>see also</u> <u>Regents of the Univ. of California v. Doe</u>, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, the defendants, who are all SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. <u>See</u> <u>Will</u>, 491 U.S. at 70-71. Although a State may waive sovereign immunity, <u>Lapides v. Board of Regents</u>, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district

court.  See S.C. Code Ann. § 15-78-20(e).  Accordingly, to the extent the defendants are sued in their official capacities, they are immune from suit.  Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

### 3.        Eighth Amendment—Excessive Force

As outlined above, Mann alleges multiple incidents of excessive force in his Complaint.  The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  To proceed with his excessive force claim under the Eighth Amendment, Mann must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The " 'core judicial inquiry' " in an excessive force claim under the Eighth Amendment is " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.  However, " [w]hen prison officials maliciously and sadistically use force to cause harm,' . . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth

Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " <u>Wilkins</u>, 130 S. Ct. at 1178 (quoting <u>Hudson</u>, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." <u>Whitley v. Albers</u>, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. <u>Id.</u> at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." <u>Id.</u> at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. <u>Id.</u> The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." <u>Id.</u> at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting. <u>See</u> <u>Williams v. Benjamin</u>, 77 F.3d 756 (4th Cir. 1996); <u>Bailey v. Turner</u>, 736 F.2d 963, 969 (4th Cir. 1984). In <u>Bailey</u>, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the



Constitution. Specifically, the <u>Bailey</u> Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner. <u>Bailey</u>, 736 F.2d at 969-70. The <u>Bailey</u> Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat. <u>Id.</u> Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." <u>Id.</u> at 969. Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." <u>Williams</u>, 77 F.3d at 763 (internal quotations marks & citation omitted).

### i.    June 9, 2010

This first instance of excessive force alleged by Mann occurred on June 9, 2010. As described above, Mann alleges that Defendant Failey confiscated some of Mann's legal documents and threatened to destroy them. Mann states in his Complaint that he "objected and refused to come talk to [Failey]," causing Failey to spray him multiple times with chemical munitions. The court observes that when Mann initially described this incident in his Complaint, he alleged that Failey sprayed him three times, but that in his response in opposition to the defendants' summary judgment motion, he alleges that Failey sprayed him twice and then directed Sergeant Ronnie Williams—who is not a defendant in this action—to spray Mann once more.

In support of their summary judgment motion, the defendants have provided an incident report, a use of force report, and a "min narrative" indicating that Sergeant Williams gave Mann



several directives, Mann disobeyed, and Williams dispersed approximately 200 grams of chemical munitions from an MK-9 fogger into Mann's cell. (ECF No. 114-3 at 3-5.) The defendants have also provided testimony from Randall Brown, the Armory Sergeant at BRCI, who avers that "it is not unusual for a single one to two second burst from an MK-9 fogger to dis[b]urse 200 or more grams of munitions" and that this size dosage is not lethal. (Brown Aff. ¶¶ 3-4, ECF No. 176-1 at 2.) Additionally, while Defendant Failey acknowledges that she confiscated some of Mann's documents as contraband pursuant to SCDC policy, she avers that she "do[es] not recall using chemical munitions or any other force on Inmate Mann" on the date of this incident. (Failey Aff. ¶¶ 4-5, ECF No. 124-2 at 2.) Mann disputes certain aspects of the defendants' version of events and provides affidavit testimony from multiple inmates who claim to have witnessed the incident.[3] (See, e.g., ECF Nos. 171-4 at 2, 171-5 at 2, 171-6 at 2-4).

Applying the Whitley factors to the facts viewed in the light most favorable to Mann, the court concludes that the amount of force used was not constitutionally excessive. Importantly, Mann acknowledges that he was upset with Failey and that he "objected" and "refused to come talk to her." (Compl., ECF No. 1 at 3.) Accordingly, regardless of which officer deployed the chemical munitions, the undisputed evidence in the record shows that Mann's behavior was necessitating the use of the mace. Bailey, 736 F.2d at 969-70. Thus, even viewing the facts that are disputed in the light most favorable to Mann, no reasonable jury could find that Failey's perception of Mann's

---

[3] Although the defendants argue that many of the affidavits provided as exhibits by Mann should not be considered by the court because they do not satisfy the requirements of Rule 56 of the Federal Rules of Civil Procedure in that they "are neither sworn nor notarized," (Defs.' Reply Supp. Mot. Summ. J. at 2, ECF No. 176 at 2), the court notes that, upon review, all appear to have been declared under penalty of perjury pursuant to 28 U.S.C. § 1746. See 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 (3d ed. 1998).



behavior was unreasonable.  See Whitley, 475 U.S. at 321-322.  Further, Mann has failed to allege

or produce any evidence showing any discernible injury from the use of chemical munitions.  The

court observes that Mann was seen by medical personnel following the incident, where he was

observed to have "no visible injury," and continued to be seen by medical personnel on a daily basis

for the next five days, who noted no injuries or even subjective complaints.  Accordingly, the court

concludes that no reasonable jury could find that the use of mace was not a good faith effort to

restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used

maliciously and sadistically to cause physical harm.  See Wilkins, 130 S. Ct. at 1178; see also Bailey,

736 F.2d at 969-70; Williams, 77 F.3d at 763.

### ii.    June 14, 2010

Following the June 9, 2010 incident, Mann went on a five-day hunger strike.  The incident

on June 14, 2010 occurred as Mann was being returned to his cell by Officer Beckett—who is not

a defendant in this matter—following a visit to the medical area to check Mann's vital signs.  As

stated above, Mann alleges that he became lightheaded, that Officer Beckett called to Defendant

Failey to assist him in taking Mann back to medical, and that Failey grabbed Mann by the arm and

the chain between his legs and dragged him back to medical, causing Mann great pain.  In support

of his allegations, Mann provides his own affidavit testimony as well as an affidavit from another

inmate who witnessed this event.  (See ECF Nos. 171-11 at 2, 171-12 at 2-3.)  The defendants have

provided testimony from Defendant Failey, who avers that Officer Beckett and another SCDC officer

escorted Mann back to the medical area, and that she did not make any contact whatsoever with

Mann or his restraints at any time during the incident.  (Failey Aff. ¶ 7, ECF No. 124-2 at 2.)



Even assuming Failey participated in the above-described incident as alleged by Mann, Mann's evidence is insufficient to create a genuine issue of material fact as to whether the amount of force used was more than was minimally required under the circumstances. The evidence before the court, including Mann's own allegations, is that Mann "became lightheaded and dizzy and had to kneel down to keep from losing consciousness." (Compl., ECF No. 1 at 4.) Accordingly, the "force" that Mann describes could reasonably be attributed to that required to transport a semi-conscious inmate back to the medical area. Further, Mann has presented no evidence, other than the general and conclusory allegations of his Complaint and witness testimony, that the amount of force used was excessive. Additionally, Mann's medical records immediately following this incident reflect that Mann had "no apparent injury" and "jumped up and cursed out [the] Lt." before returning to his cell with a "steady gait." (ECF No. 118-1 at 1.) Accordingly, no reasonable jury could find that the defendants' use of force in transporting Mann was employed wantonly, maliciously, or sadistically to inflict pain, and the defendants are therefore entitled to summary judgment on this claim.

### iii.     July 28, 2010

The third alleged excessive force incident involving Defendant Failey occurred on July 28, 2010 during Mann's transport from a holding cell back to his unit. During this transfer, Mann was in full body restraints. At some point during the transfer, Mann's lower restraints were removed to allow him to walk down some stairs. Although Mann states in his Complaint that he then "used [his] foot to shove [Failey] away from him," he provides further detail in his affidavit in which he explains that he "turned and kicked Lt. Failey in the right hand side of her neck with my right foot. She flipped backwards into the handrail and rolled down the handrail." (Compl., ECF No. 1 at 6; Mann



Aff. ¶ 10, ECF No. 171-19 at 4.)  The other four officers escorting him—who are not defendants in this matter—threw Mann to the ground, and Mann alleges that he did not resist the officers as they held him down.  Failey then allegedly began kicking and punching Mann in the head, neck, and face.

Here, the court views the disputed facts in the light most favorable to Mann and assumes for purposes of this motion that he did not actually resist the four officers who held him down on the floor.  Nonetheless, no reasonable jury could find that Failey's perception that Mann continued to constitute a threat to be unreasonable.  Mann does not dispute that he had, mere seconds before, violently assaulted an officer despite being restrained.  Further, Mann had a heightened security status due to his frequent recalcitrant behavior and history of escape attempts.  Accordingly, no reasonable jury could find that Failey's perception that Mann continued to pose a potential risk or threat was unreasonable and that her use of physical force was not a good faith effort to defend against or prevent another attack following his assault on an officer despite being in restraints, but rather was used maliciously and sadistically to cause physical harm.  See Whitley, 475 U.S. at 320-21; Wilkins, 130 S. Ct. at 1178.  Finally, the court observes that Mann was seen by medical following the incident, and no injury was noted in the medical encounter.  Thus, applying the Whitley factors to the facts as presented by Mann, the defendants' motion for summary judgment must be granted as to this claim.

iv.    **August 23, 2010**

On August 23, 2010, following a disciplinary hearing during which Mann had produced a piece of a broken paper clip from his mouth, Mann was informed that he was going to be moved into a strip-cell.  Mann objected and was sprayed with chemical munitions.  An extraction team then arrived consisting of Defendants Moore, Manley, Cook, McNeal, and Manganelli.  Mann concedes



that when the extraction team entered his cell, he threw fecal matter at them.[4]  He alleges that he was thrown to the floor and placed in restraints without resisting the officers, and that the officers then began beating him until he became unconscious.  Mann further alleges that Defendant Manganilli repeatedly slammed Mann's face into the concrete floor, breaking Mann's front tooth, and then rubbed fecal matter in Mann's face and mouth.  He also alleges that one of the officers wrapped a bed sheet around Mann's neck, repeatedly choking him.  Mann was then placed in the restraint chair, where he alleges he remained for almost six hours.

The defendants provide affidavit testimony from several officers involved in the above-described incidents that shed additional light on the incident.  Defendant Willie Simmons avers that he made several attempts to retrieve Mann from his cell so that Mann's cell could be checked for contraband.  (Simmons Aff. ¶ 4, ECF No. 126-1 at 2.)  He attests that he, along with other SCDC officers, gave Mann several directives so that Mann could be restrained, but that Mann refused and yelled profanities at him.  (Id.)  Simmons then deployed his chemical munitions, but they appeared to have no effect on Mann, as Mann continued to refuse to comply with directives.  (Id.)  Mann has not refuted Simmons's averments in this regard.

Moreover, affidavits provided by members of the extraction team and other SCDC officers provide additional details, some of which contradict Mann's version of events.  In summary, they aver that as they entered Mann's cell, Mann had situated himself on the top bunk against the wall and began throwing bottles of feces at the officers.  (See Manley Aff. ¶¶ 4-10, ECF No. 113-3 at 2-3;

---

[4] The record further contains unrefuted evidence that Mann pelted the extraction team with approximately thirteen to eighteen bottles containing feces, some or all of which he obtained from a neighboring inmate "through a portal in their cell toilets."  (See Incident Report, ECF No. 115-4 at 2; Pl.'s Resp. Opp'n Summ. J., ECF No. 171 at 17.)



Wright Aff. ¶¶ 4-8, ECF No. 113-5 at 2; Cox Aff. ¶¶ 4-8, ECF No. 113-6 at 2; Simmons Aff. ¶¶ 6-7, ECF No. 126-1 at 2-3; Manganelli Aff. ¶ 7, ECF No. 127-2 at 2.) Again, Mann does not dispute this. However, contrary to Mann's story, the guards attest that as the officers attempted to restrain Mann, he resisted violently. (Id.) They aver that even after Mann was instructed multiple times to stop resisting, Mann continued to kick, punch, thrash out, and curse at the members of the extraction team. (Id.) Even as Mann continued to struggle violently, the extraction team was finally able to get Mann to the ground and restrain him. (Id.) After Mann was restrained, he was escorted to be examined by medical. (Id.)

Mann's medical records demonstrate that Mann was seen immediately after his cell extraction but before he was placed in the restraint chair, where it was observed that he had a one-inch laceration on his forehead. (ECF No. 117-1 at 14.) An attempt was made by the medical staff to examine Mann's teeth, but it was noted that Mann refused to open his mouth. (Id.) Mann was then placed in the restraint chair. Thereafter, the medical staff cleaned Mann's head wound and applied steri-strips. (Id.) No subjective complaints by Mann were noted at this time, and no other injuries were described.

Again applying the Whitley factors to the version of events presented by Mann, the court concludes that the defendants are entitled to summary judgment on this claim. Indisputably, the need for force was great in light of Mann's admitted refusals of the guards' directives and attack on them with fecal matter, a criminal act. See S.C. Code Ann. § 24-13-470 (describing the crime and penalties for the "throwing of body fluids on correctional facility employees and certain others"). The extent of the threat to the safety of the guards was high, both in light of Mann's contemporaneous behavior and his past history of violence and recalcitrance. Even accepting

Mann's statement that he immediately ceased resisting upon the arrival of the extraction team, the law views the need for force through the lens of the guards as long as their perceptions are reasonable. It does not require them to divine the exact point in time that a violent, truculent inmate who has just assaulted them will decide genuinely to desist or to rightly guess whether or not he is "playing possum" in anticipation of further attack.[5]  Significantly, Mann had a history of attacking guards even when in restraints.  Moreover, the unrefuted evidence shows that the guards began their use of force with a burst of chemical munitions rather than a flesh-to-flesh confrontation, then graduated the force employed to an extraction team in light of Mann's lack of compliance and attack with fecal matter, demonstrating the defendants' efforts to temper the severity of the force applied. Finally, medical records regarding the extent of the actual injury inflicted suggest that the force applied was not disproportionate to the circumstances and belie Mann's claims of a gratuitous beating.  Examining the totality of the undisputed circumstances, including the unequivocal record that, with Mann particularly, there existed an ever present potential for violence and unrest, the court concludes that no reasonable jury could find that the defendants' use of chemical munitions and physical force to extract Mann from his cell was not commensurate with the reasonably perceived threat posed by Mann, or was done wantonly to inflict pain and was not applied in a good faith effort to restore order.

---

[5] A contrary conclusion would penalize prison officials who use force to diffuse a threat and restore order when facing chaotic circumstances such as those presented here where an inmate has just violently attacked prison guards.  Such a rule would fly in the face of the deference the Supreme Court has acknowledged must be shown to guards who work in such a volatile setting.  Whitley, 475 U.S. at  321-22.



v.        **Restraint Chair**

Mann's Complaint contains multiple allegations regarding the defendants' use of a restraint chair.  Mann appears to clarify this claim in his response in opposition to the defendants' summary judgment motion when he states that he "does not assert that the use of the Restraint Chair by itself by the Defendants was a violation of his Constitutional rights.  Nor even the duration for which he was placed in this chair."  (ECF No. 171 at 21.)  Rather, his claim rests on his assertion that the defendants used the restraint chair as a means of punishment.  The defendants provide affidavit testimony from Robert M. Stevenson, III, the Warden of BRCI, who avers that "[a]n inmate in the Saluda Unit who is engaging in behavior that is dangerous to themselves, dangerous to the institution, unit or others, or otherwise destructive, disruptive or problematic to the safety and security of the institution is often placed in the Restraint Chair." (Stevenson Aff. ¶ 8, ECF No. 113-2 at 2-3.)

Here, Mann has not made a showing of "malicious and sadistic conduct" on the part of the defendants to survive their motion for summary judgment.  While Mann states that he was "not out of control, or causing any commotion, or displaying behavior warranting further control" at the time he was placed in the restraint chair, it is undisputed that immediately prior to each placement, Mann had committed disruptive or destructive behavior.  (See, e.g., Compl. ¶¶ 7, 8 , ECF No. 1 at 8, 9-12) (describing two occasions when Mann admittedly "popped the fire sprinkler head in the strip-cell" and "threw fecal matter" at officers).  The defendants' response to these actions—placing Mann in the restraint chair—occurred under monitoring by medical staff and resulted in no physical injury to Mann.  See Rodriguez v. Taylor, C/A No. 9:08-01027-RBH, 2008 WL 5244480, at *8 (D.S.C. 2008) ("Plaintiff's placement in a restraint chair . . . does not in and of itself constitute an excessive



use of force, as the use of [such] devi[c]es . . . have repeatedly been found to be constitutional when used appropriately."). Accordingly, no reasonable jury could find that the defendants' use of the restraint chair to control Mann was sadistic and malicious rather than to restore order and discipline.

### vi. Denial of Decontamination Following Deployment of Chemical Munitions

Mann also asserts an Eighth Amendment claim based on his allegation that he was denied a shower for a long period of time following the deployment of chemical munitions. Courts in this circuit have analyzed such claims as ones asserting excessive force. Williams v. Benjamin, 77 F.3d 756, 764-65 (4th Cir. 1996) (analyzing plaintiff's claim that he was restrained without the opportunity to wash after being maced as an excessive force claim).[6]

Significantly, Mann avers with regard to the August 23, 2010 macing incident that he experienced painful burning from the mace and, notwithstanding his repeated requests to Defendants Wilson and Simmons, was not permitted to wash it off, as he was denied a shower and placed into the restraint chair. (Mann Aff. ¶¶ 5, ECF No. 171-34 at 2-3.) The defendants have offered no evidence refuting this contention. The Fourth Circuit has expressly found that the unexplained denial of an opportunity for an inmate to wash off mace that is causing painful burning prior to the imposition of a lengthy confinement in restraints can support an inference of the wanton infliction of pain in violation of the Eighth Amendment. Id. at 764 n.4 (noting that the fact that prisoners are permitted to wash off mace shortly after its application has been a significant factor in upholding its

---

[6] Alternatively, the Fourth Circuit has also analyzed such a claim as one asserting medical indifference, see Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008), but the court concludes that Mann has presented this claim as one alleging excessive force, as in Williams. Even analyzing the claim as a medical one, the court finds that Mann has presented sufficient evidence to avoid summary judgment on this claim. See id. at 241-44 (discussing the denial of decontamination by guards and finding plaintiff had presented evidence of deliberate indifference to a serious medical need).



use) (citing <u>Soto v. Dickey</u>, 744 F.2d 1260, 1266 (7th Cir. 1984 )).  As previously noted, the defendants have not refuted Mann's allegations in this regard in any way.  Consequently, the court finds no basis in the record to distinguish Mann's allegations from those presented in <u>Williams</u>. Accordingly, Defendants Wilson and Simmons are not entitled to summary judgment on Mann's Eighth Amendment claim that they knew of his condition and denied him the opportunity to be decontaminated from painful chemical munitions prior to being restrained for a long period of time.[7]

### 4.    Deliberate Indifference—Conditions of Confinement

Mann also alleges that his constitutional rights were denied when he was placed in a holding cell for a period of time; denied meals, running water, a mattress, a blanket, socks, exercise, and hygiene items at various times; placed in "strip-cells" on various occasions that he alleges were unsanitary; and was exposed to second-hand chemical munitions when a cell neighbor was maced.

"The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted).   To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting <u>Williams v. Griffin</u>, 952 F.2d 820, 824 (4th Cir. 1991)).

To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate

---

[7] The court observes that the defendants are not entitled to qualified immunity on this claim, since <u>Williams</u> is clearly established law in the Fourth Circuit.  <u>Iko</u>, 535 F.3d at 240.



food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81. However, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Notwithstanding Mann's allegations regarding his conditions of confinement, he has failed to demonstrate, or even allege, that he suffered a serious or significant physical or mental injury, or that there was a substantial risk of such serious harm, as a result of the alleged conditions. See De'Lonta, 330 F.3d at 634 (stating that only an "extreme deprivation," which is a "serious or significant physical or emotional injury resulting from the challenged conditions," or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement). Accordingly, the defendants are entitled to summary judgment on these claims.

### 5.    Deliberate Indifference—Medical Treatment

The standard for deliberate indifference, requiring an inmate to establish that a sufficiently serious deprivation occurred and that the prison official had a sufficiently culpable state of mind, also



applies to medical indifference claims under the Eighth Amendment.  <u>Farmer</u>, 511 U.S. at 834.

Additionally, not "every claim by a prisoner [alleging] that he has not received adequate medical

treatment states a violation of the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976).

To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or

excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>,

896 F.2d 848, 851 (4th Cir. 1990).  Mere negligence, malpractice, or incorrect diagnosis is not

actionable under 42 U.S.C. § 1983.  <u>See Estelle</u>, 429 U.S. at 106.  While the Constitution requires

a prison to provide inmates with medical care, it does not demand that a prisoner receive the

treatment of his choice.  <u>Jackson v. Fair</u>, 846 F.2d 811, 817 (1st Cir. 1988).  "[A] prisoner's mere

difference of opinion over matters of expert medical judgment or a course of medical treatment

fail[s] to rise to the level of a constitutional violation." <u>Nelson v. Shuffman</u>, 603 F.3d 439, 449 (8th

Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); <u>see also</u> <u>Wright</u>

<u>v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a

constitutional claim and fails to create a genuine issue of material fact.  <u>See</u> <u>Nelson</u>, 603 F.3d at 449;

<u>see also</u> <u>O'Connor v. Pierson</u>, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to

determine . . . medical fitness, whether physical or mental; that is what independent medical experts

are for."); <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records

indicating that treatment was provided and physician affidavits indicating that the care provided was

adequate, an inmate cannot create a question of fact by merely stating that she did not feel she

received adequate treatment."); <u>Fleming v. Lefevere</u>, 423 F. Supp. 2d 1064, 1070 (C.D. Cal.2006)

("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact



because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

In his Complaint, Mann generally alleges that he was denied medical care. He appears to challenge the treatment, or lack thereof, provided by Defendant Sampson. Mann's claim of deliberate indifference to a serious medical need fails because the record unequivocally shows that Mann was frequently seen and treated by medical staff for his complaints. Moreover, as stated above, Mann does not have a claim against the defendants merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Mann's claims allege negligence or medical malpractice, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

**6.    Due Process**

Mann alleges that his due process rights were violated when (1) he was not allowed to attend hearings related his protective custody status, and (2) he was not given notice of or allowed to attend hearings regarding his "strip-cell" status. However, Mann has failed to demonstrate that he has been deprived a life, liberty, or property interest that would trigger the protections of the Due Process Clause.

### 7.     Access to Courts

It is well established that prisoners have a constitutional right of access to the courts. <u>Bounds</u> <u>v. Smith</u>, 430 U.S. 817 (1977).  In <u>Bounds</u>, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Id.</u> at 828.  To state a cognizable claim for denial of meaningful access to the courts a prisoner must allege a specific, actual injury resulting from the alleged denial.  <u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996); <u>Cochran v. Morris</u>, 73 F.3d 1310 (4th Cir. 1996).  The <u>Lewis</u> Court further explained that

> the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the <u>Bounds</u> line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions.  In <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), we extended this universe of relevant claims only slightly, to "civil rights actions"—*i.e.*, actions under 42 U.S.C. § 1983 to vindicate "basic constitutional rights."

<u>Lewis</u>, 518 U.S. at 354 (internal citations omitted); <u>see</u> <u>also</u> <u>Christopher v. Harbury</u>, 536 U.S. 403, 414-15 (2002) (stating that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong").

Specificity is required in pleading a denial of access to the courts claim.  <u>Cochran</u>, 73 F.3d at 1317.  Moreover,

> the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.  It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.  There is, after all, no point in spending time and money to establish the facts constituting

denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

Christopher, 536 U.S. at 415.

In this case, Defendant Failey acknowledges an occasion on which she confiscated documents that Mann had sent to be copied under another inmate's name. (Failey Aff. ¶ 4, ECF No. 124-2 at 2.) She avers that Mann's actions violated SCDC policy, and the documents thus became contraband and were confiscated. (Id.) She also swears that she filled out an incident report, informed Mann that the documents were being confiscated as contraband, and was never instructed to return the confiscated documents to Mann. (Id.)

Mann does not dispute that he violated SCDC's policy with regard to the documents that were confiscated. Moreover, Mann has not demonstrated any actual injury as required to state a claim for denial of access to the courts. See Lewis, 518 U.S. at 351 (stating that an inmate must demonstrate that the deficiencies in the prison's library or legal assistance program "hindered his efforts to pursue a legal claim"); Cochran, 73 F.3d at 1317 (holding that the district court properly dismissed a claim for denial of access to the courts where the plaintiff failed to identify any actual injury resulting from official conduct); Strickler v. Waters, 989 F.2d 1375, 1384 (4th Cir. 1993) (observing that a prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access"). As Mann cannot demonstrate an actual injury, summary judgment is appropriate as to this claim.

### 8.    First Amendment (Legal and Personal Mail)

Mann also appears to allege that the defendants violated his constitutional rights by withholding unspecified legal mail. Inmates retain their First Amendment rights in prison. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, in Turner v. Safley, 482 U.S. 78, 89 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." To meet this standard, the Turner Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. Id. at 89-90. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id. at 89; see also In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ("Prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

The United States Court of Appeals for the Fourth Circuit has held that "[w]ithout question, the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ." Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999). Legal mail may not be opened outside of the presence of the prisoner or addressee.



See Wolff v. McDonnell, 418 U.S. 539, 575 (1974).  In response to Mann's allegations, the defendants have provided affidavit testimony from Eugene Keitt, the Postal Director at BRCI who also supervised Defendant James Harris, an employee in the BRCI mail room.  (Keit Aff. ¶¶ 1-2, ECF No. 113-4 at 1.)  Keit avers that he does not recall that any of Mann's mail was ever confiscated or held.  (Id. ¶¶ 11, 13, ECF No. 113-4 at 3.)  Keitt also swears that he does not recall receiving any directives from any SCDC officer or employee—including Defendant Failey—to confiscate or hold any of Mann's mail, nor does he recall Defendant Harris receiving any such order or directive.  (Id. ¶ 12, ECF No. 113-4 at 3.).

To the extent that Mann alleges any defendant confiscated or withheld his *personal* mail, this allegation fails to rise to the level of a constitutional violation, as he has a meaningful post-deprivation remedy available under state law.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Mora v. City of Gaithersburg, Md., 519 F.3d 216, 230-31 (4th Cir. 2008) (concerning the intentional taking of guns and ammunition from the plaintiff); Bogart v. Chapell, 396 F.3d 548, 561-63 (4th Cir. 2005) (finding that intentional destruction of the plaintiff's animals did not violate the due process clause because South Carolina afforded a meaningful post-deprivation remedy for the loss of animals).  Keitt avers that pursuant to SCDC policy, all incoming non-legal mail is inspected for unauthorized property items prior to delivery to the inmate.  (Keitt Aff. ¶ 6, ECF No. 113-4 at 2.)  He further swears that if incoming or outgoing mail contains questionable material, it is forwarded to the Institutional STG Officer of Investigator, and the inmate is notified.  (Id. ¶ 8-9, ECF No. 113-4 at 2-3.)  Keitt avers that he does not recall ever turning over any of Mann's incoming or outgoing mail or that any of Mann's mail was ever confiscated or held.  (Id. ¶¶ 11, 13, ECF No. 113-4 at 3.)  As stated above, Keitt also swears that he does not recall receiving any directives from



any SCDC officer or employee—including Defendant Failey—to confiscate or hold any of Mann's mail, nor does he recall Defendant Harris receiving any such order or directive. (Id. ¶ 12, ECF No. 113-4 at 3.) Mann has presented no evidence refuting the defendants' showing in this regard.[8] Accordingly, the defendants are entitled to summary judgment on these claims.

### 9.    Conspiracy

The parties appear to agree that an attempt was made to videotape Mann's extraction from his cell on August 23, 2010. Mann alleges that on September 3, 2010, Defendant Wright informed Mann that the video of the August 23, 2010 incident would be destroyed. Mann further alleges that the defendants conspired to destroy the video. The defendants dispute Mann's assertion. (See Stevenson Aff. ¶ 9, ECF No. 113-2 at 3; Manley Aff. ¶ 11, ECF No. 113-3 at 3; Wright Aff. ¶ 9, ECF No. 113-5 at 3; Simmons Aff ¶ 9, ECF No. 126-1 at 3; Jones Aff. ¶ 5, ECF No. 126-2 at 2; Sutton Aff ¶ 12, ECF No. 127-1 at 4; Manganelli Aff ¶ 9, ECF No. 127-2 at 3.)

To establish a conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). The plaintiff "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id. Further, the "[i]ndependent acts of two [or more] wrongdoers do not make a conspiracy." Murdaugh Volkswagon v. First Nat'l Bank, 639 F.2d 1073, 1075-76 (4th Cir. 1981). When a plaintiff makes only conclusory allegations of a conspiracy and fails to demonstrate any agreement or meeting of the

---

[8] Although Mann states in a letter that some unspecified evidence is contained in a property bag to which he is not currently being given access by the guards at his current institution, this letter does not meet the requirements of Rule 56(d) of the Federal Rules of Civil Procedure.



minds among the defendants, no claim will lie.  See Woodrum v. Woodward County, Okla., 866

F.2d 1121, 1126-27 (9th Cir. 1989); Ruttenberg v. Jones, 283 F. App'x 121, 131-32 (4th Cir. 2008).

Mann has provided no evidence to indicate that any of the defendants planned or acted

together to deprive Mann of any constitutional right.  Accordingly, any alleged conspiracy claim

fails.

**C.      Other Claims**

To the extent Mann is attempting to assert any other claims, his Complaint fails to state a

plausible claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

**RECOMMENDATION**

For the above reasons, the court recommends that the defendants' motion for summary

judgment be granted in part and denied in part, and this matter be set for trial with regard to Mann's

Eighth Amendment claim against Defendants Wilson and Simmons for the August 23, 2010 denial

of the opportunity for decontamination from chemical munitions.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 1, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).