**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-6446**

———————

ANTHONY L. MANN,

            Plaintiff - Appellant,

       v.

LT. C. FAILEY; MAJOR SHERONDA SUTTON; WARDEN ROBERT STEVENSON
III; ASST. WARDEN JOHN BARKLEY; ASST. WARDEN LARRY CARTLEDGE;
INV. DAVID HURT; VALERIE WHITAKER; CLASSIFICATION MNGR MACON;
DONALD SAMPSON, MD; E. KEITT; JAMES HARRIS, III; CAPT. PERCY
JONES; CAPT.  WILSON; LT. WILLIE SIMMONS; LT. T. JOHNSON; SGT.
BELUE; SGT. YOUNG; SGT. HERMAN WRIGHT; SGT. KEITH MOORE; CPL.
OTIS DANIELS; CPL. VINCENT MANLEY; CPL. SMALLS; CPL. RAY; OFC.
MCNEAL; OFC. COX; CHRISTIAN MANGANELLI; C. COOK; ROBYN ELERBY,

            Defendants - Appellees,

       and

OFC.  MURRAY,

            Defendant.

———————

Appeal from the United States District Court for the District of
South Carolina, at Rock Hill.  Richard M. Gergel, District
Judge.  (0:11-cv-02232-RMG)

———————

Argued:  May 13, 2014                    Decided:  July 17, 2014

———————

Before TRAXLER, Chief Judge, KING, Circuit Judge, and DAVIS,
Senior Circuit Judge.

———————

Affirmed in part; vacated and remanded in part by unpublished per curiam opinion.

_____

**ARGUED:** Adam Zurbriggen, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Janet Brooks Holmes, MCKAY, CAUTHEN, SETTANA AND STUBLEY, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:** Steven H. Goldblatt, Director, Rita K. Lomio, Supervising Attorney, Lola A. Kingo, Supervising Attorney, Bethany S. Hamm, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Daniel R. Settana, Jr., Richard E. Marsh, III, MCKAY, CAUTHEN, SETTANA AND STUBLEY, P.A., Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Anthony Mann, a South Carolina inmate, appeals an adverse summary judgment on his Eighth Amendment excessive force claims asserted pursuant to 42 U.S.C. § 1983.[1] Mann's complaint arises out of a series of incidents involving correctional officers and others at the Broad River Correctional Institution ("BRCI"). He contends that the officers assaulted and battered him and denied him means of decontamination after they used significant quantities of pepper spray to subdue him.

Although a magistrate judge recommended that Appellees' motion for summary judgment be granted in part and denied in part, upon its de novo review of the magistrate judge's report

---

[1]  Mann was self-represented in the district court and initially on appeal. We appointed counsel to file a formal brief and present oral argument in this Court. Although Mann originally asserted many and varied claims, the only claims before this Court are those claims discussed in this opinion. We appreciate the fine efforts of counsel to assist this Court in resolving this appeal.

Relatedly, we leave to the district court upon remand to determine whether the interests of justice will be served through an appointment of counsel in the district court. We also leave to the district court determination whether further proceedings short of trial, e.g., further discovery, is appropriate. In this regard, we note that (as the case proceeded below) the district court had no occasion to assess whether and to what extent, if any, the potential individual liability of any of the twenty-nine specifically named Appellees should be more carefully scrutinized in light of the evidence in the record, or whether any such party should be dismissed from the action.

and recommendation, the district court granted the motion in its entirety. In doing so, the district court concluded that Mann had forecasted insufficient evidence that the officers applied force "maliciously and sadistically for the very purpose of causing harm." See Whitley v. Albers, 475 U.S. 312, 320-21 (1986). For the reasons set forth within, we vacate the judgment in part and remand for further proceedings.

## I.

This fact-intensive case arises out of correctional officers' use of physical force against Mann during summer 2010. At the summary judgment stage, we view the facts in the light most favorable to Mann, the non-moving party. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (observing in excessive force case that inmate was to "have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him" (citation omitted)), cert. denied, 491 U.S. 1109 (1991).

Mann, who is serving a life sentence for murder, was incarcerated in BRCI's Special Management Unit ("SMU"), located in Columbia, South Carolina. It is undisputed that Mann was a difficult inmate: his prison record contains a significant number of disciplinary charges and convictions, including

attempted escape. Medical records indicate that Mann suffers from bipolar disorder, ADHD, anxiety, and depression.

In or about June 2010, Mann began experiencing conflict with Lt. Cathaline Failey, the SMU unit supervisor, soon after he reported an incident of alleged neglect of an inmate in medical distress to her superiors. According to Mann's verified complaint, Lt. Failey began retaliating against Mann by shouting verbal assaults and threats, withholding food, and denying him access to his legal material. Their conflict eventually escalated into a series of acts of alleged excessive force by Lt. Failey and other correctional officers; Mann's allegations as to these use-of-force incidents are briefly summarized below.

On June 9, 2010, officers sprayed Mann's prison cell with several blasts of Oleoresin Capsicum pepper spray for failing to comply with orders to back up and be restrained. He was then left in the closed cell for forty-five minutes. Thereafter, despite his multiple requests to take a shower, Mann was placed in a strip cell and was not decontaminated from the chemicals for the next five days. As a result, he experienced burning sensations over his body.

On the morning of June 14, Mann was checked by medical staff and escorted back to the SMU in full body restraints. On the way, he became lightheaded and knelt to the ground. The escort officer called for assistance from Lt. Failey, who

responded by "grabb[ing Mann] by his left arm and the back of the crotch chain between his legs" and roughly dragging him 25 yards to the medical unit. Mann states that Lt. Failey's actions "smashed his testicles and caused him extreme pain and agony." J.A. 23.

Several weeks later, Lt. Failey had a heated conversation with the attorney involved in Mann's post-conviction proceedings when he contacted her to request that she return Mann's legal material. The next day, on July 28, Lt. Failey locked Mann in a small holding cell for the day, stating, "Let's see how you like sitting in here all day. You gon' have your attorney call me, like you don't know no better. Im'a fix you, white boy." J.A. 24.

At the end of the day, as Lt. Failey was part of a team transporting Mann from the holding cell back into his unit, Mann's leg restraints were removed in order for him to descend the stairs. At some point, Lt. Failey adjusted the remaining constraints so that they became painful. Mann, aggravated, delivered a roundhouse kick to Failey's neck, knocking her against the banister and sending her down the stairs. Four other officers wrestled Mann to the floor, and Mann stopped resisting.

Even though Mann was subdued, Failey ran up the steps to him and began kicking and punching him in the head, striking him numerous times, until one of the other officers holding Mann

interposed his body between her and Mann and told her that he had Mann under control. Lt. Failey nevertheless continuously struck his head and face with her fist as he was carried, "in hogtie form," fifty yards to the holding cell. J.A. 580-81.

Four of Mann's fellow inmates provided sworn eyewitness affidavits that corroborated Mann's account of this incident. J.A. 571; 573; 575; 576. There are no medical records related to this incident, although Mann claims that he sought treatment for his injuries but received no response to his requests.

The aforementioned interactions escalated further on August 23, 2010. The incident began when a disciplinary hearing for Mann was interrupted because he produced a broken paperclip, apparently as evidence that he had not previously stolen a handcuff key (although he had been able to escape from restraints). Mann was ejected from the hearing. He was originally placed in his original cell but was to be transported to a strip cell. When Mann refused to submit for transfer, officers expelled several bursts of pepper spray into his cell and left him there for an hour.

A five-officer extraction team then sought to enter the cell. By that point, Mann had propped his mattress against the cell door, and he began pelting the officers with approximately 13-18 bottles of fecal matter from his position on the top bunk. This action, known as "shit-bombing," had apparently been the

subject of threats made by SMU prisoners in the past, though the record does not state if it had ever actually occurred prior to this incident. The team of officers were hit, some in their faces.

Mann eventually allowed himself to be thrown to the floor and placed in restraints. Affidavits from inmates in neighboring cells report hearing Mann repeatedly yell that he is "down . . . and not resisting." J.A. 617; 621; 632.

Mann was thereafter attacked by the guards. One officer slammed his face into the concrete floor and picked up a bottle of fecal matter and poured it over his face. Others continuously punched, kneed, kicked, and choked him until he lost consciousness. He was carried in a chokehold position out of the unit for 40 to 50 yards, with the officers slamming his body on walls and bars along the way. Officers then immediately placed him in a restraint chair for six hours, where he sat fully restrained at the ankles and wrists, in and out of consciousness. Mann was denied the opportunity to decontaminate even though he was "burning all over [his] face, body, and in [his] facial wound." J.A. 652-53. He was then placed in a strip cell and was not permitted to shower for four days.

Inmate affidavits report hearing the commotion in Mann's cell and observing Mann being "aggressively removed" from the cell with a "bed sheet tightly noosed" around his neck. J.A.

8

632. Medical records completed immediately after the incident indicate that Mann received treatment for a laceration on his head that was one-inch long, one-quarter inch deep, and a "moderate [amount] of blood on face." J.A. 341. Mann later complained that one of his front teeth had been broken in the encounter, but the prison nurse recorded that she was unable to examine his teeth because Mann would not open his mouth.

Cell extractions in BRCI are intended to be recorded, and at the onset of the August 23 extraction, one of the officers carried a video recorder. At some point, however, the content of the recorder became unavailable. Other inmates have overheard guards suggesting that they deliberately destroyed the evidence of the beating so "no jury [could] see that video-tape." J.A. 627; 630.

According to Mann, he repeatedly asked both the officers and the nurses who treated his injuries if he could be decontaminated, but he was denied: the nurses said he would have to talk to Security; the officers told him he would "be lucky if [he] ever got to decontaminate after what [he'd] done." J.A. 652. He was also told that he had to wait until his hours in the restraint chair were up. Mann's medical records do not mention these requests. He has stated that he was in the chair for six hours and was not permitted to shower for four days.

9

II.

Mann filed suit against twenty-nine officers, medical personnel, and others, including the Warden and Assistant Warden, Lt. Failey, and those officers involved or observing the August 23 cell extraction. All defendants but one are Appellees before this Court. They filed a lengthy consolidated motion for summary judgment, in response to which Mann filed a lengthy opposition accompanied by more than fifty exhibits. The district court referred the motion to a magistrate judge for a report and recommendation.

As relevant to this appeal, the magistrate judge recommended granting Appellees summary judgment on all excessive force claims except Mann's claim that the officers unconstitutionally denied his request to decontaminate on August 23, which she recommended should proceed to trial. The magistrate judge concluded that the circumstances were indistinguishable from those presented in Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996). The parties filed timely exceptions to the report and recommendation and the district court conducted a de novo review thereof.

The district court granted Appellees' summary judgment motion on all counts. With respect to the officers' use of force on June 14, July 28, and August 23, the court concluded that no reasonable jury could find that the officers were not acting in

10

good faith in taking action to subdue Mann. As to the June 9 decontamination denial, the court noted that Mann had not complained during his subsequent medical visits; and as to the August 23 decontamination denial, the court distinguished <u>Williams</u> on several grounds, including that pepper spray was used, not mace, and that Mann was examined by medical staff before being placed in the restraint chair. Mann timely appealed.

III.

State and federal inmates serving sentences of incarceration are protected under the Eighth Amendment from the "unnecessary and wanton infliction of pain" by prison guards and supervisory officers. <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986) (internal citations omitted). Eighth Amendment excessive force claims contain an objective and a subjective component: in order for the plaintiff to prevail, he must demonstrate that that (1) the "deprivation suffered or injury inflicted . . . was sufficiently serious," and (2) the "prison official acted with a sufficiently culpable state of mind." <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). Only the latter, subjective requirement is at issue in this case.

The subjective component is satisfied when an officer's application of force was applied "maliciously and sadistically for the very purpose of causing harm," rather than as part of "a

11

good-faith effort to maintain or restore discipline." Hudson v.
McMillian, 503 U.S. 1, 6-7 (1992) (internal citations omitted).
"[A] court may allow an inmate's claim to go to the jury only if
it concludes that the evidence, viewed in a light most favorable
to the claimant, will support a reliable inference of wantonness
in the infliction of pain." Stanley v. Hejirika, 134 F.3d 629,
634 (4th Cir. 1998) (internal quotation marks omitted).

In Whitley, the Supreme Court outlined several factors to
consider when evaluating the subjective component: the need for
the application of force; the relationship between the need and
the amount of force that was used; the extent of the injury
inflicted; the extent of the threat to the safety of staff and
inmates, as reasonably perceived by the responsible official;
and any efforts made to temper the severity of a forceful
response. Whitley, 475 U.S. at 320-21. Notably, a lack of injury
is not dispositive, so long as there is sufficient evidence of
maliciously-applied force. Wilkins v. Gaddy, 559 U.S. 34, 38
(2010) (per curiam) ("An inmate who is gratuitously beaten by
guards does not lose his ability to pursue an excessive force
claim merely because he has the good fortune to escape without
serious injury.").

The evidence supporting Mann's case-in-chief is derived
from inmate affidavits, prison records, and his own statements

12

under oath.[2] Many of the facts are disputed – and vigorously so –
but Appellees argue that, even under Mann's version of the
facts, they are entitled to judgment as a matter of law. Upon
our careful review of the summary judgment record, however, we
cannot agree. We conclude that Mann has provided sufficient
evidence to substantiate each of the excessive force claims
pressed on appeal and that the entry of summary judgment on
those counts was error.

---

[2] Appellees have repeatedly criticized Mann's presentation
of evidence as improper and insufficient. These protestations
are unavailing. The vast majority of the statements submitted by
inmate witnesses were either notarized or declared under the
penalty of perjury. See Fed. R. Civ. P. 56(c)(1)(A) (permitting
either "affidavits" or "declarations"); 28 U.S.C. § 1746 (a
litigant may rely on an "unsworn declaration, certificate,
verification, or statement" if it is subscribed "as true under
penalty of perjury").

Indeed, the record could defeat summary judgment even if
the evidence consisted exclusively of so-called "self-serving"
declarations from Mann himself. Opp. Br. at 12-14. It is well
settled that we may not, at summary judgment, discount viable,
material evidence on the ground that it was offered by a
plaintiff with a troubled past. E.g., Williams v. Staples, Inc.,
372 F.3d 662, 667 (4th Cir. 2004) (the court "may not make
credibility determinations" in reviewing the record). As
Appellant's brief observes, this rule is acutely necessary in
cases with pro se prisoner plaintiffs, where "events [take]
place with only prison guards present[, a]nd an inmate has
little control of his situation and movement, and few means of
establishing facts, other than recounting evidence himself."
Rep. at 8-9.

A.   Claims as to Deprivation of Decontamination

We first examine Mann's contention that Appellees violated the Eighth Amendment when they refused to let him shower or otherwise decontaminate after expelling pepper spray in his cell on June 9 and again on August 23.

We have previously held that the denial of decontamination can give rise to an Eighth Amendment claim. Williams, 77 F.3d at 768. In Williams, an inmate threw "foul" liquids on officers, and they responded by spraying a near-lethal dose of mace into the plaintiff's cell. Although the plaintiff then complied with the officers' orders, he was placed in four-point restraints and chained to a bunk for eight hours. Williams was in "immense pain" because of the mace and pleaded for water to wash off the mace, but the officers did not permit him to decontaminate, and no medical personnel checked on his condition. Id. at 765. This Court applied the Whitley factors and concluded that summary judgment was unwarranted. It held that to do otherwise would create a "harmful precedent," in that "whenever any inmate causes a disturbance by throwing water or something similar at a guard, and refuses to obey a further command, guards can — without fear of violating the Constitution — spray an inmate in the face with mace and then confine him in four-point restraints for an extended period of time without permitting him to wash[.]" Id.

14

We agree with the magistrate judge that <u>Williams</u> controls in the instant case and that evidence bearing on the August 23 incident warrants a merits trial. Although Mann's circumstances are not on all fours with those presented in <u>Williams</u>, the fact remains that, taking Mann's sworn allegations as true, Appellees have provided "no reason for the guards' refusal to permit [Mann] to wash" and "no evidence that [Mann] was not in the [pain] he alleges." <u>Id.</u> at 765. Regardless of whether pepper spray or mace was used, and regardless of whether he was restrained in a separate room, the record (viewed in the light most favorable to Mann) clearly reflects a prisoner in pain for several hours and a cadre of officers who refused to allow him to decontaminate. With the additional submission by Mann that an officer told him that he would "be lucky if he <u>ever</u> got to decontaminate after what [he'd] done," J.A. 652, there is ample evidence from which a fact finder could find that Appellees acted maliciously, sadistically, and in violation of the Eighth Amendment.

Similarly, we hold that Appellees are not entitled to summary judgment as to the June 9 denial of decontamination claim. Mann has sworn that after being sprayed, he repeatedly asked officers and medical staff for a shower, was denied, and experienced burning pain over his body for five days; a reasonable jury could infer from this evidence that Mann has

15

adequately established both the subjective and objective prongs
of his Eighth Amendment claim.

The district court's holding to the contrary relies on the
absence of certain evidence, namely the fact that the official
prison records do not contain any complaints of injury, or any
evidence "suggest[ing] that Plaintiff lacked running water with
which he could have decontaminated himself." J.A. 879. But Mann
has supplied sufficient evidence, in the form of his sworn
affidavit and those of other inmates, to rebut those inferences.
See Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)
(summary judgment "may not be invoked where, as here, the
affidavits present conflicting versions of the facts which
require credibility determinations."). Mann's statements raise
genuine issues of disputed fact as to whether Appellees wantonly
denied his repeated requests to wash off the painful effects of
pepper spray before confining him with four-point restraints or
placing him into a strip cell. It was error for the district
court to grant summary judgment on this record.

B.    Claims as to Use of Physical Force

Mann also contends that the district court erred in
granting summary judgment on his allegations of excessive
physical force; we agree.

With regard to the events of August 23, the version of
events sworn to by Mann (and supported by the affidavits of

16

other inmates) amply make the case that officers on the cell extraction team wrapped a bed sheet around Mann's neck, choked him into unconsciousness with it, continued to beat him after he had been wrestled to the floor and had been placed in leg and arm restraints, and afterward slammed his face into iron doors and bars en route to a holding cell. Inmate affidavits from those in neighboring cells report hearing Mann yell that he was "down" and "not resisting." Subsequent records reflect medical treatment to a not-insignificant laceration on Mann's head.

Notwithstanding Mann's egregiously offensive and abusive behavior in spattering the extraction team with feces as they entered his cell, it is plainly the case that a jury could find that the officers on the extraction team continued to apply force against Mann well after he had ceased his resistance. Because a jury could infer from these facts that the officers wantonly administered serious force to Mann in retaliation for his conduct rather than for the purpose of bringing him under control, the district court failed to apply summary judgment principles as Fed. R. Civ. P. 56 and we prescribe. See Miller, 913 F.2d at 1087.

The district court focused on giving "wide-ranging deference to the judgment of prison officials." J.A. 881. Most assuredly, as it stated, "[a] court should not retrospectively attempt, in the calmness of a federal courthouse years after a

17

volatile incident initiated by a disobedient and violent prisoner, to second guess the exact moment the prisoner was under control and no further use of force was necessary." J.A. 881-82. But while some degree of forceful officer action was undoubtedly required to contain Mann in the instant situations, courts may not "insulate from review [those] actions taken in bad faith and for no legitimate purpose." Whitley, 475 U.S. at 321. Given the affidavits, both from Mann and other inmates, that he shouted multiple times that he was "not resisting;" given the probative evidence of the officers' statements before, during, and after the incident; and given the suspect disappearance of the official August 23 videotape, there is ample support for an inference that "summary, informal, unofficial and unsanctioned corporal punishment" was employed in retaliation for Mann's attack. Ort v. White, 813 F.2d 318, 324 (11th Cir. 1987).

Our review of the record leads us to the same conclusion with regard to the June 14 and July 28 incidents. On both occasions, according to Mann's amply supported version of the facts, Lt. Failey acted aggressively in dealing with a fully-restrained inmate. On June 14, for example, she dragged Mann for 25 yards by a chain that was attached to his crotch because he had felt lightheaded and knelt down to recover. And on July 28, she continued to assault Mann to the point where another guard

18

used his own body to shield Mann's head and neck from further blows.

Many of the Whitley factors support a holding in favor of Mann. The force applied by Lt. Failey occurred after Mann had been restrained, and in that sense was unnecessary to preserve order. It would appear that there was not a significant "need for the application of force" and that Mann was not a serious threat as "reasonably perceived by the responsible officials." Whitley, 475 U.S. at 320-21. This is especially true in light of Lt. Failey's statements to Mann before and during the incidents, from which malicious intent could be readily inferred. E.g., J.A. 24 ("Im'a fix you, white boy."); J.A. 25 (threatening to "kick [his] ass"); J.A. 580 (calling Mann a "crybaby" and that "she was going to beat [him] like [his] mama should've.").

It may very well be the case that Mann is violent, volatile, and engaged in flagrantly provocative behavior. It may likewise be the case that, when the record is further developed, Mann will find it difficult, and perhaps impossible, to prevail on his claims - to prove that he was confined and assaulted in the manner he alleges, that the force applied by Appellees was unjustified, and that they full well knew this. But where, as here, a prisoner has duly filed the necessary briefs, affidavits, and corroborative evidence to support his claims,

19

such disputes of credibility are reserved for a fact finder, here, as requested by Appellees, a jury.

IV.

For the reasons set forth, we vacate the judgment of the district court in part and remand for further proceedings insofar as judgment was granted in favor of Appellees as to the claims discussed herein. See supra, n.1. In all other respects, we affirm the judgment of the district court.

<u>AFFIRMED IN PART;</u>
<u>VACATED AND REMANDED IN PART</u>

20